UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case No. 1:25-CV-23861-ALTMAN/Lett**

PAMASA S.A.,

      Plaintiff,

v.

BANCO SANTANDER
INTERNATIONAL,

      Defendant.

_____/

BANCO SANTANDER
INTERNATIONAL,

      Counterclaimant,

v.

PAMASA S.A., BÁRBARA MANSILLA
ORTIZ, VALERIE MANSILLA ORTIZ, and
FRANCISCO OMAR MANSILLA ORTIZ,

      Counterclaim-Defendants.

_____/

**INTERPLEADER DEFENDANT FRANCISCO OMAR MANSILLA ORTIZ'S ANSWER
TO AGREED INTERPLEADER COUNTERCLAIM, AND CROSSCLAIMS AGAINST
INTERPLEADER DEFENDANTS VALERIE MANSILLA ORTIZ AND
<u>BÁRBARA MANSILLA ORTIZ</u>**

Interpleader Defendant and Crossclaimant Francisco Omar Mansilla Ortiz ("Francisco")

hereby answers Defendant and Counterclaimant Banco Santander International's ("BSI's") Agreed

Interpleader Counterclaim (the "Interpleader Counterclaim") as follows:

1.      Francisco admits the allegations in Paragraph 1 of the Interpleader Counterclaim.

2.      Francisco admits the allegations in Paragraph 2 of the Interpleader Counterclaim.

1

3. Francisco admits the allegations in Paragraph 3 of the Interpleader Counterclaim.

4. Francisco admits the allegations in Paragraph 4 of the Interpleader Counterclaim.

5. Francisco admits the allegations in Paragraph 5 of the Interpleader Counterclaim.

6. Francisco admits the allegations in Paragraph 6 of the Interpleader Counterclaim.

7. Francisco admits the allegations in Paragraph 7 of the Interpleader Counterclaim.

8. Francisco admits the allegations in Paragraph 8 of the Interpleader Counterclaim.

9. Francisco lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of Paragraph 9 of the Interpleader Counterclaim, but admits the allegations in the first sentence of Paragraph 9.

10. Francisco admits the allegations in Paragraph 10 of the Interpleader Counterclaim.

11. Francisco admits the allegations in Paragraph 11 of the Interpleader Counterclaim.

12. Francisco denies that Bárbara and Valerie had joint signing privileges for the Account, but admits the remaining allegations in Paragraph 12 of the Interpleader Counterclaim.

13. Francisco admits the allegations in Paragraph 13 of the Interpleader Counterclaim.

14. As to Paragraph 14 of the Interpleader Counterclaim, Francisco admits that Bárbara sent a letter to BSI, as set forth in Exhibit 1, and respectfully refers the Court to this exhibit for complete and accurate description thereof.

15. As to Paragraph 15 of the Interpleader Counterclaim, Francisco admits that Bárbara sent a letter to BSI, as set forth in Exhibit 1, and respectfully refers the Court to this exhibit for complete and accurate description thereof.

16. As to Paragraph 16 of the Interpleader Counterclaim, Francisco admits that Bárbara sent a letter to BSI, as set forth in Exhibit 1, and respectfully refers the Court to this exhibit for complete and accurate description thereof.

17.     As to Paragraph 17 of the Interpleader Complaint, Francisco admits that Mansilla Córdova sent a letter to BSI on April 14, 2021, as set forth in Exhibit 2, and respectfully refers the Court to this exhibit for the complete and accurate description thereof.

18.     As to Paragraph 18 of the Interpleader Complaint, Francisco admits that both Mansilla Córdova and Bárbara claimed authority to act on behalf of Pamasa, and that these claims conflicted.

19.     Francisco denies the characterization of "Account signatories," but otherwise admits the allegations in Paragraph 19 of the Interpleader Counterclaim.

20.     As to Paragraph 20 of the Interpleader Counterclaim, Francisco admits that BSI sent the referenced letter on October 14, 2021, as set forth in Exhibit 3, and respectfully refers the Court to this exhibit for the complete and accurate description thereof.

21.     As to Paragraph 21 of the Interpleader Counterclaim, Francisco admits that BSI sent the referenced letter on October 14, 2021, as set forth in Exhibit 3, and respectfully refers the Court to this exhibit for the complete and accurate description thereof.

22.     As to the first sentence of Paragraph 22 of the Interpleader Counterclaim, Francisco lacks knowledge or information sufficient to form a belief as to whether Bárbara and/or Valerie communicated with BSI after the Account was frozen, except Francisco admits that he communicated with BSI through counsel on multiple occasions after the Account was frozen. Francisco denies the remaining allegations in Paragraph 22, except admits that a February 11, 2022 letter from Bryan Cave Leighton Paisner LLP exists, and refers the Court to the letter for the complete and accurate description thereof.

23.     Francisco denies the allegations in Paragraph 23 of the Interpleader Counterclaim as BSI has not specifically referenced nor attached the correspondence in which such allegations were allegedly set forth.

24.     Francisco lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 24 of the Interpleader Counterclaim.

25.     Francisco admits that throughout this period, BSI did not lift the freeze on the Pamasa account, but otherwise denies the allegations in Paragraph 25 of the Interpleader Counterclaim.

26.     Francisco admits the allegations in Paragraph 26 of the Interpleader Counterclaim.

27.     Francisco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 27 of the Interpleader Counterclaim, but admits the remaining allegations in Paragraph 27.

28.     Francisco admits the allegations in Paragraph 28 of the Interpleader Counterclaim.

29.     Francisco admits the allegations in Paragraph 29 of the Interpleader Counterclaim.

30.     Paragraph 30 of the Interpleader Counterclaim contains legal conclusions to which no response is required.  To the extent a response is required, Francisco denies the allegations set forth in Paragraph 30, except admits that BSI has employed attorneys at Winston & Strawn LLP in connection with the conflicting claims regarding control of the Account.

31.     Paragraph 31 of the Interpleader Counterclaim contains legal conclusions to which no response is required.  To the extent a response is required, Francisco denies the allegations set forth in Paragraph 31.

32.     Francisco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the Interpleader Counterclaim.

33. Paragraphs 33 to 39 of the Interpleader Counterclaim contains requests for relief for which no response is required.

## CROSSCLAIMS

Interpleader Defendant and Crossclaimant Francisco Omar Mansilla Ortiz ("Francisco"), in his individual capacity and in his capacity as Executor of the estate of his father, Dr. Francisco Rigoberto Mansilla Córdova ("Mansilla Córdova"), files these crossclaims against his sisters, Interpleader and Cross-Defendants Valerie Mansilla Ortiz ("Valerie") and Bárbara Mansilla Ortiz (Bárbara), and states as follows:

### NATURE OF THE ACTION

1. The dispute in this interpleader action, which involves competing claims to a bank account in the name of Pamasa S.A. ("Pamasa") at Banco Santander International ("BSI") in Miami, is the latest chapter of a fraudulent scheme orchestrated and carried out by Francisco's sisters, Valerie and Bárbara, to thwart their late father's succession plans. Their father, Mansilla Córdova, was an extremely wealthy and prominent Guatemalan businessman who died in July 2022. For estate-planning purposes, in the years before he died, Mansilla Córdova consolidated his assets in several entities under his control, including Pamasa, of which he was the lone individual shareholder.

2. Confronted with the prospect of being disinherited, Valerie and Bárbara hatched a scheme to oust their father and brother from their respective roles as President and Vice President of Pamasa and seize control of the entity for themselves. Through deceit, and based on nonsensical allegations of potential conflicts of interest by their father, they succeeded in obtaining that control via court order, *but strictly on a provisional basis*. As they had planned all along, they then exploited Pamasa's unusual corporate structure to entrench themselves permanently and to divert

assets worth hundreds of millions of dollars to newly created foreign entities under their exclusive control, thereby preventing those assets from passing to Francisco, the sole heir and beneficiary under their father's Will.

3.       The BSI account at issue contains funds that had belonged exclusively to Mansilla Córdova and that he intended for Francisco to inherit. Valerie and Bárbara nevertheless ask this Court to summarily award them control of the account as Pamasa's purported representatives— without scrutiny of the illicit manner in which they acquired and have maintained those positions— and, in doing so, to unwittingly validate and legitimize their scheme.

## PARTIES, JURISDICTION, AND VENUE

4.       Interpleader Defendant and Crossclaimant Francisco Omar Mansilla Ortiz is a Guatemalan citizen who resides in Guatemala City, Guatemala.

5.       Interpleader and Cross-Defendant Valerie Mansilla Ortiz is a Guatemalan citizen who upon information and belief resides in Guatemala City, Guatemala.

6.       Interpleader and Cross-Defendant Bárbara Mansilla Ortiz is a Guatemalan citizen who upon information and belief resides in Guatemala City, Guatemala.

7.       Pamasa, S.A. is a Guatemalan entity incorporated in Guatemala City, Guatemala in March 1990.

8.       Non-party Agrícola El Amate, S.A. is a Guatemalan entity incorporated in Guatemala City, Guatemala, in November 1998.

9.       Banco Santander International, Defendant and Counterclaimant who was dismissed from this case after the Court granted its request for interpleader, is an Edge Act banking corporation organized in the United States under Section 25A of the Federal Reserve Act, with its principal place of business in Miami, Florida.  BSI is a Florida citizen for diversity purposes.

10.     The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, and because diversity is satisfied in the context of a Rule 22 interpleader action where, as here, there is complete diversity between the stakeholder on the one hand, and the claimants on the other.  Moreover, diversity is not lost in this context when the stakeholder is discharged.

11.     The Court has supplemental jurisdiction over Francisco's crossclaims, which relate to his entitlement to control the BSI account and the funds therein.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the property that is the subject of competing claims is maintained in BSI's office in this District.

## GENERAL ALLEGATIONS

13.     The Interpleader Defendants' father, Mansilla Córdova, was an incredibly successful Guatemalan businessman who died in July 2022, at the age of 94.  During his lifetime, much of his wealth was derived from his holdings within the Guatemalan liquor industry.  Most notably, through various entities, he was 24% shareholder of Industrias Licoreras de Guatemala ("ILG"), a private alcohol distillery best known for producing such world-renowned rums as Ron Zacapa and Ron Botran, among others.

14.     Between 2013 and 2020, Mansilla Córdova's diverse portfolio of assets was held by a Panamanian private interest foundation called the Fundación San Isidro Internacional (the "San Isidro Foundation" or the "Foundation").  The Foundation was the central pillar of his estate planning; it was a structure that was intended to protect his assets and allow him to more easily manage them.

15.     Mansilla Córdova was the Foundation's primary beneficiary, and his children—Valerie, Bárbara, and Francisco—were its secondary beneficiaries.  As the Foundation's President

7

and Chairman of the Board, however, Mansilla Córdova retained exclusive decision-making authority and discretion over its administration and the disposition of its assets.  In the exercise of that discretion, amidst growing tensions within his family, he had decided that his daughters' inheritance would contain strict conditions making it impossible for them or their husbands to ever manage the family businesses.

16.    In apparent retaliation for those restrictions, in October 2018, Valerie and Bárbara attempted to usurp their aging father's control of the Foundation.  Forging his signature, they fraudulently amended the Foundation's bylaws to add a provision allowing a majority of its secondary beneficiaries (*i.e.*, themselves) to invoke a mechanism for having Mansilla Córdova declared legally incapacitated.  The fraudulent amendment was invalidated when it was discovered.

17.    Alarmed by his daughters' conduct, Mansilla Córdova decided to restructure his estate to give him peace of mind that his assets were legally safeguarded.  To this end, he decided to have the Foundation transfer its assets to two Guatemalan entities he had founded decades earlier that he believed were safely under his control:  Pamasa and Agrícola El Amate.

18.    On February 4, 2020, Pamasa and Agrícola El Amate each held a General Shareholders' Meeting.  The purpose of these meetings was (1) to appoint officers and directors; and (2) to authorize the entities to receive the Foundation's assets.  As to each entity, Mansilla Córdova was appointed President and Legal Representative, Francisco was appointed Vice President and Legal Representative, Bárbara was appointed the first Board member (Member I), and Valerie was appointed the second Board member (Member II).

8

19. Mansilla Córdova's and Francisco's respective corporate appointments were formally registered in Guatemala's Commercial Registry, giving them (and only them) the legal authority to act on behalf of the entities.

20. As Mansilla Córdova planned, following the February 4, 2020 General Shareholders' Meeting, the Foundation transferred the majority of its assets to Pamasa. The Foundation was then voluntarily dissolved.

21. The Foundation had long held two bank accounts at BSI, of which Mansilla Córdova was the ultimate beneficiary. As part of the asset transfer, in or around July 2020, Mansilla Córdova had a BSI account opened for Pamasa (*i.e.*, the "Account") and transferred the funds from the Foundation's accounts into that Account. Following the transfers, the balance of the Account was approximately $7,600,000.

22. For the avoidance of doubt, the funds that Mansilla Córdova transferred into the Account—including all amounts that remain in the Account to this day—belonged exclusively to him, and neither his children nor any third party had any claim to them.

23. By transferring the funds to the Account, Mansilla Córdova did not see the funds as leaving his possession, at all, because that was not his intent; at that stage of Pamasa's corporate existence, the entity—like the Foundation before it—did not have any current or contemplated purpose other than to hold his personal assets. The transfer was made as an estate planning transaction to make it easier to pass on his inheritance.

24. The ownership structure of Pamasa and Agrícola El Amate, respectively, was unusual in that it represented a closed circuit, whereby Mansilla Córdova owned 1% of each entity's shares, with the remaining 99% held by the other entity. Thus, Pamasa was the 99% shareholder of Agrícola El Amate, and Agrícola El Amate was the 99% shareholder of Pamasa.

25.     Although Mansilla Córdova had been advised that this cross-ownership structure would perpetuate his exclusive control of the entities as envisioned, he intended to invert the structure so that he would personally hold the 99% and the entities would hold the 1%.  On July 1, 2020, he convened General Shareholders' Meetings for Pamasa and Agrícola El Amate for that purpose—*i.e.*, in order to formalize and effectuate this transfer of shares.

26.     Relevant to the allegations herein, in Guatemala, notaries are vested with the capacity to certify the authenticity of certain documents and facts, but they take on a different and more substantial role than in the United States.  In Guatemala, all notaries are required to be lawyers, and they carry a presumption of veracity.  In the context of shareholders' meetings, the notary acts as secretary, verifying the competence of all participants and that all formalities have been satisfied.

27.     Unfortunately, the meeting minutes from the July 1, 2020 General Shareholders' Meetings contained a notarial error:  The minutes reflected that the Meetings had been held on the same date and at the same time and place, with the same notary acting as secretary.  Upon discovering the error, Mansilla Córdova convened new General Shareholders' Meetings on October 28, 2020, and—this time ensuring that all notarial formalities had been followed— annulled the resolutions that had been adopted on July 1, 2020, thus leaving the corporate structures of each entity just as they had been prior to July 1, 2020.

28.     On April 11, 2021, Valerie filed an *amparo* against the Board of Directors of Pamasa and Agrícola El Amate, respectively.  *See* **Exhibit 1** (Constitutional Protection Petition, dated April 11, 2021).  In Guatemala, an *amparo* is a legal action that seeks to protect parties from violations of their constitutional rights.  The procedure most analogous to an *amparo* in the United States is a petition for a writ of habeas corpus.

10

29.     In her capacity as Member II, Valerie claimed to be in fear of the imminent violation of the entities' property rights—*i.e.*, the theft of the entities' assets—by her father, Mansilla Córdova, *even though the entities' assets belonged to him*.  She claimed that this imminent theft was being enabled by her brother, Francisco, and by an allegedly dishonest notary.  In relevant part, she requested an order (1) provisionally suspending the corporate appointments of Mansilla Córdova and Francisco, and (2) enjoining the entities from carrying out any act that would remove, transfer, or dispose of company property.

30.     Valerie's *amparo* suffered from blatant procedural and substantive deficiencies and irregularities.  Perhaps most glaringly, Valerie filed her petition in a *criminal* court in a small province in southern Guatemala with no connection to the parties or the dispute: the Court of First Instance for Criminal Matters, Drug Activity, and Environmental Offenses of Santa Lucía Cotzumalguapa, Escuintla (the "Santa Lucía Court").  The corporate domicile of each of the respondent entities was 100 kilometers away in the capital, Guatemala City, which was also where Valerie and each of her siblings lived.  Valerie made no attempt to even try and justify her choice of forum, but her reason for proceeding in that forum would soon become obvious.

31.     In her *amparo*, Valerie alleged a bizarre blend of deceit and incapacitation on the part of her then-93-year-old father.  Valerie alleged that her father had purposefully orchestrated an unlawful "scheme" to transfer the entities' assets to himself during the July 1, 2020 General Shareholders' Meetings, a scheme that she claimed was in violation of conflict-of-interest provisions in the entities' governing documents and Guatemala's commercial code.  Valerie claimed that her father had kept these Meetings a secret from the rest of the Board members in order to prevent their opposition to his scheme.

32.    Valerie further alleged that her father's scheme was primarily evidenced by the defective meeting minutes—even though, undisclosed to the court, what she presented as evidence of forgery and fraud (*i.e.*, the fact that the minutes reflected the impossible circumstance of the meetings having taken place on the same date and at the same time) were merely the above-mentioned notarial errors that had already been cured.

33.    With regard to Francisco's involvement in this supposed scheme, Valerie alleged, *without any details*, that he had been authorized to carry out acts that would help his father steal the entities' assets.

34.    In addition to the alleged scheme, Valerie claimed that her aging father was no longer able to manage the entities because of his deteriorating health, and in support she attached several medical certificates.  She contemporaneously moved to have her father declared incapacitated through a formal, civil interdiction proceeding in the Municipality of Mixco, where her father lived—which is adjacent to Guatemala City—raising the same supposed concerns of physical and mental decline.  The Mixco Court rejected her petition.

35.    The entire premise of Valerie's *amparo*—*i.e.*, that conflicts of interest prevented her father from participating in the resolution of corporate matters that affected him—was nonsensical on its face.  Mansilla Córdova was not only the President and founder of each entity, but also their lone *individual* shareholder.  The entities existed to manage his assets, a fact that Valerie acknowledged in her petition.  Indeed, Bárbara and Valerie have admitted even in their filings to *this Court*—the United States District Court for the Southern District of Florida—that Mansilla Córdova was the company's "sole owner." *See* Case No. 1:25-cv-22315-Bloom, D.E. 1, Complaint, at ¶ 7.

12

36.     Moreover, although Valerie alleged that Mansilla Córdova had failed to notify the other Board members of the July 1, 2020 meeting, this was a desperate attempt to manufacture the appearance of impropriety where none existed, because the entities' bylaws provided that, "if all shareholders are present, a Totalitarian General Meeting may be held without the need for prior notice, provided that no shareholder objects to holding it . . . ." And again, Mansilla Córdova was the only non-corporate shareholder.

37.     None of that mattered, however, because the outcome of Valerie's petition was predetermined.  On April 12, 2021, the Santa Lucía Court granted the *amparo* on an *ex parte* basis within three hours of it being date-stamped as received (the "Provisional Amparo").  In the Provisional Amparo, the Court:

> (1)  Provisionally suspended Mansilla Córdova as President and Legal Representative of both entities;
>
> (2)  Provisionally suspended Francisco as Vice President and Legal Representative of the entities;
>
> (3)  Appointed Valerie as temporary Legal Representative of the entities;
>
> (4)  Suspended the resolutions of the July 1, 2020 Shareholders' Meetings (even though they had already been expressly annulled); and
>
> (5)  Imposed a provisional ban on transferring or disposing of corporate assets.

**Exhibit 2** (Provisional Amparo, dated April 12, 2021).

38.     Although the Provisional Amparo ordered that Pamasa and Agrícola El Amate be notified and given 48 hours to submit a "detailed report," no such notice was ever provided.  And because the Amparo was not contingent upon any future event, contained no expiration date, and did not set any further deadlines, that failure was of no consequence to Valerie or her co-conspirator Bárbara.

13

39.     Tellingly, even when Mansilla Córdova and Francisco learned of the Provisional Amparo *informally* in the days after its issuance and attempted to respond to it—both in their individual capacities and, separately, in their respective capacities as corporate representatives— the Santa Lucía Court declined to consider their submissions.  Thus, just like that, Mansilla Córdova and Francisco were ousted from their positions—and in Mansilla Córdova's case, dispossessed of the estate that he had spent his entire life accumulating—without any findings of wrongdoing, and without so much as an opportunity to respond to Valerie's baseless allegations until months later, after the case had been transferred to another court.

40.     Valerie and Bárbara, however, were only just getting started.  Immediately after the Santa Lucía Court granted the Provisional Amparo in April 2021, Valerie and Bárbara proceeded to engage in the exact conduct that Valerie had claimed to be acting to prevent:  Invoking and relying upon their newfound authority, but in reality far exceeding and abusing that authority, they took steps to dispossess Pamasa and Agrícola El Amate of all of their valuable assets—supposedly in order to "protect them."  As a first step, in a transparent attempt to give themselves cover, Valerie and Bárbara sought and obtained an expansion of the Amparo that authorized the disposal of corporate assets for the claimed purpose of satisfying tax obligations.

41.     Valerie and Bárbara intended to immediately take control of the Account and appropriate its funds for themselves.  On April 14, 2021, two days after the Provisional Amparo was entered, Bárbara wrote to BSI and informed the Bank of the Amparo, and instructed the Bank that only Valerie and herself were authorized to provide instructions on behalf of Pamasa.

42.     On the same day, April 14, 2021, Mansilla Córdova wrote to BSI regarding the Account and requested the cancellation of a certificate of deposit, along with other related fees. He directed that a check for the proceeds instead be issued in his name.

43.     On June 18, 2021, Bárbara wrote a follow-up letter to BSI and demanded that Mansilla Córdova and Francisco be removed as signatories on the Account.

44.     On October 14, 2021, BSI responded and advised that it had placed a block on the Account because of conflicting claims regarding who was authorized to act on behalf of Pamasa.

45.     In the meantime, Valerie and Bárbara directed their attention to the entities' other assets. They understood that because they now controlled Pamasa, they also were in a position to take control of the entities under Pamasa's control—the most important of which was Valores Guatemaltecos, S.A.  With 54% of its shares, Pamasa was the majority shareholder of that entity, which in turn owned 24% of the share capital in a series of entities that comprised ILG.  The shares of Valores Guatemaltecos represented the undisputed crown jewel of Mansilla Córdova's estate, with an estimated value at the time north of $200,000,000.

46.     On April 27, 2021, two weeks after the Provisional Amparo was entered, Valerie and Bárbara effectuated an illegal takeover of Valores Guatemaltecos.  They convened a shareholders' meeting of that entity, ousted its legal representatives, and appointed a sole administrator and legal representative who was under their control and aligned with their interests.

47.     Several months later, on August 18, 2021, Mansilla Córdova amended his Will to disinherit Valerie and Bárbara altogether and designate Francisco as his sole heir.  In his notarized Will, Mansilla Córdova cited his daughters' unlawful "scheme to take possession of his estate":

> *The Testator adds that he expressly disinherits any other person, other than the one appointed, who might claim an equal or superior right, especially his daughters, VALERIE MANSILLA ORTIZ and BÁRBARA IVONE MANSILLA ORTIZ, since they have been engaging in acts of ingratitude that conflict with the law in an attempt to take possession of his estate, mainly of his participation in shares in the entity, Valores Guatemaltecos, Sociedad Anónima, reaching so far as to stimulate the holding of shareholder meetings to illegally appoint Sole Managers in order to represent Valores*

*Guatemaltecos, Sociedad Anónima before the General Ordinary Shareholder's Meeting and the General Extraordinary Shareholder's Meeting of the entity, BIBENT AMERICAS CORP. in which Valores Guatemaltecos, Sociedad Anónima is a shareholder. Moreover, they have intended to suspend, through a Constitutional Protection Action before a judge lacking in jurisdiction, his title as Board of Directors Chair of the entities, PAMASA, Sociedad Anónima and Agrícola El Amate, Sociedad Anónima in which he also holds shares. . . .*

48.     A will is the most solemn and formal document under Guatemalan law.  In the context of will preparation, the notary is charged with drafting the will, printing it on special paper issued directly by the government, and following a formal process that involves certifying that the testator is mentally competent.

49.     Contemporaneously with the execution of his August 18, 2021 Will, Mansilla Córdova publicly announced his daughters' disinheritance, taking out a paid publication in the locally circulated ElPeriódico that same week in which he explained with great sadness that his daughters had "set up false scenarios to take control of the companies where my assets are located, allying themselves with people who have hidden interests, some of whom I don't even know . . . ."

50.     At that juncture, confronted with their disinheritance, and with the Provisional Amparo and their illicit maneuverings on behalf of Valores Guatemaltecos being challenged in court, Valerie and Bárbara acted with greater urgency and adopted an even more aggressive approach to appropriating their father's assets for themselves.  With the goal of placing their father's estate permanently beyond the reach of Guatemalan succession law, they started transferring the assets to newly created foreign entities under their control.

51.     On August 25, 2021, a week after being disinherited, Valerie and Bárbara formed a Panamanian private interest foundation that translates to the "Private Interest Foundation for the

16

Conservation of Corporate Assets." They thereafter improperly transferred to their new foundation the 1,999 shares of Pamasa that had been held by Agrícola El Amate.

52. A month later, on September 22, 2021, Valerie and Bárbara formed another Panamanian private interest foundation, this one that translates to the "Private Interest Foundation for the Protection of Valores Guatemaltecos." They thereafter (again improperly) transferred to this new foundation Pamasa's 54% interest in Valores Guatemaltecos, as well as Valores Guatemaltecos' 24% interest in the ILG entities.

53. Valerie and Bárbara would later transfer real estate held by Pamasa and Agrícola El Amate to a newly formed Guatemalan entity under their control called Inverpremium 2050, S.A.

54. With the Provisional Amparo in full force and effect, the underlying proceeding was eventually transferred from the Santa Lucía Court to the Seventh Court of First Instance for Civil Matters of Guatemala (the "Seventh Civil Court"). On May 24, 2022, more than a year after its issuance, the Seventh Civil Court dismissed the Amparo, reasoning that a constitutional protection action was premature, as ordinary procedures had not been exhausted. *See* **Exhibit 3** (Seventh Civil Court's May 24, 2022 Order).

55. Valerie (and Bárbara, who had intervened as a party in the interim) appealed, and on July 18, 2022, the Constitutional Court of Guatemala reversed the dismissal and reinstated the Provisional Amparo.

56. The Constitutional Court was heavily influenced by evidence of Mansilla Córdova's current health circumstances, citing reports that he was in a coma. The Constitutional Court went out of its way, however, to emphasize the *provisional* nature of its ruling:

> *The petitioner for protection [i.e., Valerie], like any individual, must be guaranteed any right such as those established in . . . the Political Constitution of the Republic. And to preserve the proper enjoyment of those rights, it is determined in this judgment that subject to the*

*final judicial decisions that must be assumed in the different trials that must be promoted in the ordinary jurisdiction by the interested shareholders of the companies Agrícola el Amate, Sociedad Anónima, and Pamasa, Sociedad Anónima, it [is] necessary to cease the effects of the acts reported in this Constitutional Protection process since there is clear evidence that it has not yet been determined with absolute certainty who should assume the representation of the Board of Directors of both commercial entities.*

*In that order of ideas, the decision taken by the [Seventh Civil Court] to deny the requested protection is not shared.  It should be noted that this decision will under no circumstances affect the operation of the aforementioned corporations, whose General Shareholders' Meetings may decide, taking into account that the representation of those corporations will be exercised in accordance with the provisions of the operative part of this ruling, until the relevant jurisdiction declares who should act as the definitive representative of the related entities. . . . .*

**Exhibit 4** (Constitutional Court's July 18, 2022 Order).

57.     In other words, the Constitutional Court explicitly contemplated that its ruling was non-final; it contemplated that its ruling would "under no circumstances affect the operation" of the entities, and that it was merely setting the conditions under which the entities were to be represented "until the relevant jurisdiction declares who should act as the definitive representative of the related entities."

58.     Of course, the Provisional Amparo had *already* "affected the operation" of the entities immensely:  Unknown to Francisco until much later, and thus unknown to the Constitutional Court at the time of its ruling, Valerie and Bárbara—entirely unconstrained—had already largely pillaged the entities and transferred their most valuable assets to entities under their exclusive control.

59.     As they had been doing since the Provisional Amparo was first entered in April 2021, they proceeded to construe the Constitutional Court's ruling as a final determination that they were authorized to act on behalf of the entities in perpetuity.

60.     On July 10, 2022, just before the Constitutional Court issued its ruling, Mansilla Córdova died.  Mansilla had spent the final years of his life deprived of his own assets—unable to even pay his medical bills without Francisco's help—and pleading with his daughters to stop their attempts to unlawfully dispossess him of his estate.

61.     Francisco, as the sole heir and beneficiary under his father's August 18, 2021 Will, would eventually inherit his father's 1% shareholdings in Pamasa and Agrícola El Amate through the probate process, after repeated and unsuccessful attempts by his sisters to have the Will annulled.  However, that would take several years.  Francisco was appointed Executor of his father's estate on November 8, 2024, and a public notarial declaration of universal heir to his father's estate was issued on March 25, 2025.  *See* **Exhibit 5** (Judicial Appointment as Executor, dated November 8, 2024), **Exhibit 6** (Declaration of Universal Heir, dated March 25, 2025).

62.     Because there had been no other non-corporate shareholders other than Mansilla Córdova at the time of his death, Valerie and Bárbara were able to use the *temporary* authority vested in them by the Provisional Amparo to effectuate a *permanent* takeover of the entities without any opposition.  Indeed, because of how the entities were structured, with each entity owning 99% of the other's shares, the Provisional Amparo had effectively granted them the voting power necessary to permanently entrench themselves in their leadership roles, even though neither of them were shareholders.

63.     Following the Constitutional Court's July 18, 2022 Order, Valerie and Bárbara convened shareholders' meetings in December 2022 and January 2024—failing to provide the

meeting notice required under Guatemalan law—at which they purported to personally ratify the corporate takeover that they had fraudulently orchestrated.

64. Today, Guatemala's Commercial Registry reflects that Valerie acts as the General Manager and Bárbara as the Sole Administrator of Pamasa, and that Bárbara acts as both the General Manager and Sole Administrator of Agrícola El Amate.

65. Valerie and Bárbara have failed to convene the legally required annual shareholders' meetings for Pamasa and Agrícola El Amate in the time since Francisco inherited his father's 1% shareholdings.

66. On December 1, 2025, the Inter-American Commission on Human Rights published an extensive report on human rights issues in Guatemala, in which it described in detail a judiciary lacking in independence and impartiality. The IACH found that "[t]he manipulation of the judicial apparatus represents one of the greatest threats to democratic stability" in the country. *See* Inter-American Commission on Human Rights, Situation of Human Rights in Guatemala, *available at* https://www.oas.org/es/cidh/informes/pdfs/2025/Informe_Guatemala_ES.pdf.

67. That was on full display with the Provisional Amparo proceedings. In November 2023, based upon a complaint that had been filed by Mansilla Córdova before his death, Guatemala's Supreme Court of Justice lifted the presumption of judicial immunity surrounding Judge José Wilfrido Umaña Calderón, the Santa Lucía Judge who granted the Provisional Amparo in April 2021. By doing so, the Supreme Court of Justice authorized a criminal investigation into Judge Umaña's potential corruption and abuse of authority in connection with the Amparo. That investigation is ongoing.

68. Meanwhile, the immediate past-President of the Constitutional Court, Judge Néster Mauricio Vásquez Pimental—who was part of the judicial panel that issued the July 2022 ruling

reinstating the Provisional Amparo—has been formally identified in the U.S. Department of State's

Section 353 Corrupt and Undemocratic Actors Report. *See* https://gt.usembassy.gov/353-corrupt-

and-undemocratic-actors-report/.

69.     In short, Mansilla Córdova and Francisco were stripped of their rights and

property—in a fraudulent scheme that is being perpetuated to this very day—based on frivolous

and conclusory allegations, and without any court ever making any findings of wrongdoing

whatsoever against either of them.

70.     Meanwhile, invoking the purported authority obtained in the fraudulent manner

outlined herein, and having already stolen the vast majority of Pamasa's and Agrícola El Amate's

assets in the name of "protecting" them, Valerie and Bárbara have again set their sights on

wrongfully taking control of the Account and appropriating its funds therein for themselves.

## CAUSES OF ACTION

### Count I – Fraud
(against Bárbara and Valerie)

71.     Francisco incorporates Paragraphs 1 through 70 as if fully set forth herein.

72.     Valerie and Bárbara orchestrated and have been carrying out a dishonest scheme

that involved ousting their father, Mansilla Córdova, and their brother, Francisco, from their

positions at Pamasa and Agrícola El Amate in order to undermine their father's succession plans

and prevent his assets from passing to Francisco under Mansilla Córdova's Will.

73.     Among other conduct, Valerie and Bárbara's scheme involved conspiring and

colluding with the local judiciary, lying in their submissions to the court, effectuating and then

perpetuating an illegal corporate takeover, and stealing their father's assets that were being held

by Pamasa and Agrícola El Amate by transferring them to newly created entities under their

exclusive control.

21

74. The funds in the Account belonged to Mansilla Córdova, and he intended the funds to be part of Francisco's inheritance.

75. Mansilla Córdova died in July 2022.

76. In November 2024, Francisco was appointed the Executor of Mansilla Córdova's estate.

77. As the sole heir and beneficiary under Mansilla Córdova's Will, Francisco has an entitlement to the funds in the Account.

78. Valerie and Bárbara's scheme has involved purposefully depriving Francisco of the funds in the Account by making a false competing claim to the Account and attempting to gain access to the Account and appropriate the funds for themselves.

79. In blocking access to the Account, BSI has relied upon Valerie and Bárbara's false statements about the legitimacy of their claims to act on behalf of Pamasa.

80. Francisco has suffered actual harm as a result of Valerie and Bárbara's conduct, namely the deprivation of control of the Account and the funds therein.

### Count II – Intentional Interference with Inheritance
(against Bárbara and Valerie)

81. Francisco incorporates Paragraphs 1 through 70 as if fully set forth herein.

82. Starting prior to Mansilla Córdova's death in July 2022, and continuing into the present, Valerie and Bárbara orchestrated and have been carrying out a scheme to undermine their father's succession plans and prevent his assets from passing to Francisco under his Will.

83. Valerie and Bárbara's scheme has involved stealing the assets that their father had placed in Pamasa and Agrícola El Amate for estate-planning purposes.

84. Among the assets they have tried to steal are the funds that Mansilla Córdova placed in the Account, which belonged to him, and which he intended to be part of Francisco's inheritance.

85.     Mansilla Córdova died in July 2022.

86.     In November 2024, Francisco was appointed the Executor of Mansilla Córdova's estate.

87.     As the sole heir and beneficiary under Mansilla Córdova's Will, Francisco had a legitimate expectancy of an inheritance of his father's estate, including the funds in the Account.

88.     Through independently tortious means, Valerie and Bárbara have interfered with Francisco's ability to inherit the funds in the Account, as their father intended, by orchestrating a takeover of Pamasa in order to make a false competing claim to the Account.

89.     There is a reasonable certainty that Francisco would have inherited the funds in the Account if not for Valerie and Bárbara's interference, and therefore Francisco has suffered actual harm as a result of the interference.

90.     The remedies available to Francisco through the probate process in Guatemala are inadequate.

**Count III – Declaratory Judgment (28 U.S.C. § 2201)**

91.     Francisco incorporates Paragraphs 1 through 70 as if fully set forth herein.

92.     There is an actual, present, and justiciable controversy between Francisco on the one hand, and Valerie and Bárbara on the other, because the parties have competing, adverse claims as to who is authorized to control the Account and access the funds therein.

93.     Francisco seeks a declaration that he is authorized to control the Account and access the funds therein, either in his individual capacity or in his capacity as Executor of his father's estate, and that Valerie and Bárbara are not so authorized, based upon the following facts and circumstances that will be proven in this case:

23

(i) The funds in the Account do not belong to Pamasa, because they belonged to Mansilla Córdova individually;

(ii) The purported authorities by which Valerie and Bárbara claim to act on behalf of Pamasa are not entitled to recognition, because *inter alia*, they were procured through fraud, were not rendered in a system that provided impartiality or procedures compatible with the requirements of due process of law, did not provide notice and/or an opportunity for Mansilla Córdova or Francisco to defend themselves, and are repugnant to the public policy of this state;

(iii) Neither Valerie nor Bárbara are shareholders of Pamasa;

(iv) Valerie and Bárbara engaged in fraud and intentionally tortious conduct in an attempt to interfere with Francisco's inheritance; and

(v) A declaration authorizing Valerie and Bárbara to control the Account and access its funds would be inequitable under the circumstances, and would result in unjust enrichment.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Crossclaimant Francisco Omar Mansilla Ortiz demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Crossclaimant Francisco Omar Mansilla Ortiz prays for a judgment in his favor and for the following relief:

A. A declaration that Francisco is authorized to control the Account and access the funds therein, either individually or in his capacity as Executor of the estate of his father, Dr. Francisco Rigoberto Mansilla Córdova;

24

B.  A declaration that Cross-Defendants Valerie Mansilla Ortiz and Bárbara Mansilla Ortiz

are not entitled to control the Account and access the funds therein;

C.  A finding that Valerie and Bárbara are liable to Francisco for fraud;

D.  A finding that Valerie and Bárbara are liable to Francisco for intentionally interfering

with his inheritance;

E.  An award of actual damages in an amount to be proven;

F.  An award of Francisco's attorney's fees and costs; and

G.  Any further relief that the Court deems just and proper.

Respectfully submitted,

*/s/ Jason L. Mays*

**NEIMAN MAYS FLOCH
& ALMEIDA PLLC**

Jeffrey A. Neiman
jneiman@nmfalawfirm.com
Florida Bar No. 544469
Jason L. Mays
Florida Bar No. 106495
jmays@nmfalawfirm.com
100 SE 3rd Ave., Suite 805
Ft Lauderdale, Florida 33394
Telephone: (305) 434-4941

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2025, a true and correct copy of the foregoing was

served via CM/ECF on all counsel or parties of record on the Service List.

By:   */s/ Jason L. Mays*
      Jason L. Mays

25