## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No. 1:25-cv-23861-RKA

PAMASA S.A.,

      Plaintiff,

v.

BANCO SANTANDER INTERNATIONAL,

      Defendant,

_____/

BANCO SANTANDER INTERNATIONAL,

      Counterclaimant,

v.

PAMASA S.A., BARBARA MANSILLA
ORTIZ, VALERIE MANSILLA ORTIZ, and
FRANCISCO OMAR MANSILLA ORTIZ,

      Counterclaim-Defendants,

_____/

FRANCISCO OMAR MANSILLA ORTIZ,

      Cross-Claimant,

v.

PAMASA S.A., BARBARA MANSILLA
ORTIZ, VALERIE MANSILLA ORTIZ,

      Cross-Defendants,

_____/

**PAMASA S.A., BARBARA MANSILLA ORTIZ AND
VALERIE MANSILLA ORTIZ'S REPLY IN SUPPORT OF THEIR
<u>MOTION TO DISMISS CROSSCLAIM OF FRANCISCO MANSILLA ORTIZ</u>**

Pamasa and Barbara and Valerie Mansilla Ortiz hereby reply in support of their Motion to Dismiss Crossclaim of Francisco Mansilla Ortiz [ECF No. 30] (the "Motion to Dismiss") and respond to his Response in Opposition to the Motion to Dismiss [ECF No. 40] (the "Opposition").

<u>**Summary**</u>

There is only one question before this Court—do Barbara and Valerie control Pamasa? The answer is a resounding and undeniable *yes.* In fact, Francisco Jr. admits that Barbara and Valerie control Pamasa. ECF No. 23, ¶ 64. The case should end there. But Francisco Jr. insists, in this Court, on exploring "***how*** they came to be the managers in the first place." Opp. 7,9 (Francisco Jr. stating that his "Crossclaim now directly challenges the ***propriety*** of the Sisters' asserted 'control.'"). Incredibly, Francisco Jr.'s own alleged expert admits that the Guatemalan courts determined that Barbara and Valerie control Pamasa, but the purported expert disagrees with those court decisions. ("[m]ost charitably put, the Santa Lucia Court and the Constitutional Court **got it wrong**.") ECF No. 40-1, 13 (emphasis added).

As much as Francisco Jr. would like a ***fourth*** bite at the apple, this Court's function is not to serve as the universal supreme court overseeing the Guatemalan judicial system and a five-member panel of the Constitutional Court of that country. The Court should decline this extraordinary request and dismiss Francisco Jr.'s Crossclaim.

<u>**Memorandum of Law**</u>

### I.     <u>Francisco Jr.'s Collateral Attack on the *Amparo* Fails.</u>

Simply stated, Francisco Jr.'s Crossclaim is an improper attempt to collaterally attack the *amparo* from Guatemala, which ultimately gave Barbara and Valerie control of Pamasa. *See Daewoo Motor Am. v. GMC*, 459 F.3d 1249, 1259 (11th Cir. 2006) ("Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment.") (quoting *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972)). Francisco Jr. essentially asks this Court to review the decision of a five-member panel of the Constitutional Court of Guatemala and find, as Francisco Jr.'s expert so eloquently opined, that the Guatemalan courts "**got it wrong**." Opp. at Ex. 1, 13 (emphasis added).

According to Francisco Jr., he can litigate control of Pamasa *again* because "the gateway issue of comity"… "should compel the Court not to recognize the *Amparo* at all." Opp. 12. With that in mind, "[p]rinciples of comity, finality and economy all militate in favor of placing the

2

burden of attacking court judgments and orders on the party who seeks to upset them." *Rashtabadi v. INS*, 23 F.3d 1562, 1569 (9th Cir. 1994). In other words, it is Francisco Jr.'s high burden to convince this Court not to recognize the subject Guatemalan judgments. Importantly, this issue can be considered at the motion to dismiss stage. *See, e.g., St. Martinus Univ., NV v. Caribbean Health Holding, LLC*, No. 19-22278-CIV-ALTONAGA/Goodman, 2020 U.S. Dist. LEXIS 33457, at *48 (S.D. Fla. Feb. 27, 2020) (granting motion to dismiss where "most of Plaintiff's allegations are virtually identical to those put before the Curaçao courts, and the remainder are either entangled with ongoing proceedings in Curaçao or additional proceedings that Plaintiff may bring there. This case is, at its core, a Curaçaoan dispute and should continue to be litigated there.").

As set forth below, Francisco Jr.'s Crossclaim does not even come close to meeting this high burden. Courts evaluate four factors in weighing comity: "(1) whether the foreign court was competent and used 'proceedings consistent with civilized jurisprudence,' (2) whether the judgment was rendered by fraud, and (3) whether the foreign judgment was prejudicial because it violated American public policy notions of what is decent and just,'" as well as (4) "whether 'the central issue in dispute is a matter of foreign law and whether there is a prospect of conflicting judgments.'" *Daewoo Motor Am.*, 459 F.3d at 1258 (quoting *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004)). In this case, each of these factors considered together, or independently, weigh in favor of complete dismissal of Francisco Jr.'s Crossclaim.

First, Francisco Jr.'s Crossclaim does not adequately allege that the Guatemalan courts were not competent or used proceedings inconsistent with "civilized jurisprudence." Instead, Francisco Jr. admits that "an *amparo* is a legal action that seeks to protect parties from violations of their constitutional rights. The procedure **most analogous to an *amparo*** in the United States **is a petition for a writ of habeas corpus**." Crossclaim, ¶ 28 (emphasis added). Obviously, a proceeding that is analogous to a petition for a writ of habeas corpus is consistent with civilized jurisprudence. Francisco Jr. merely argues that Valerie originally filed the *amparo* in an inconvenient venue (which was transferred months later), and that Francisco Jr. did not initially have an opportunity to respond to the *amparo* (until he was given the opportunity after the transfer). Crossclaim, ¶ 39. But Francisco Jr. acknowledges that he had the opportunity to appeal the *amparo,* and did so **successfully**, overturning it in an intermediate appellate court. *Id.* ¶ 54. Then a five-member panel of the Constitutional Court of Guatemala reinstated the *amparo*. *Id.* ¶

3

55. Plainly, Francisco Jr. cannot allege that these Guatemalan proceedings were somehow "inconsistent with civilized jurisprudence." He had his day in court and ultimately lost.

Second, Francisco Jr. does not adequately allege fraud. With regard to comity, "fraud does not ask whether parties have acted deceptively or fraudulently" but "whether a foreign court was acting fraudulently and is a forum so incompetent in its standards that its procedures cannot be squared with the principles underlying the American legal system." *Tr. Int'l Corp. v. Nagy*, No. 15-80253-CIV-ZLOCH, 2017 U.S. Dist. LEXIS 218318, at *18 (S.D. Fla. Mar. 28, 2017). To be clear, it "is not the correct consideration" to argue "that Defendant has acted fraudulently." *Id.* (emphasis in original). "If Defendant has used the Hungarian legal system in some way which was not above board, then the Hungarian forum was the correct place to address this concern." *Id.* Here, Francisco Jr. only alleges that there was a purported lack of evidence when the initial *amparo* was obtained: "Valerie alleged, **without any details**, that [Francisco Jr.] had been authorized to carry out acts that would help his father steal the entities' assets." Crossclaim, ¶ 33 (emphasis added). Francisco Jr. then states that because the *amparo* was promptly issued, "Valerie's petition was predetermined." *Id.*, ¶ 37. The Crossclaim lacks any non-conclusory allegations of fraud by the Guatemalan court (or even by Barbara or Valerie). And again, he conveniently glosses over the fact that a five-member panel of the Constitutional Court of Guatemala ultimately affirmed the *amparo*. The notion that multiple trial judges and five judges of the Constitutional Court were all somehow in cahoots with each other is, to put it mildly, a wild and far-fetched accusation that this Court should not entertain.

Third, Francisco Jr. does not establish that the *amparo* and corresponding appeals violated American public policy notions of what is decent and just. Francisco Jr. merely argues that the lower court should not have issued the *amparo* so quickly, although his expert admits that it is common for an *amparo* to be issued ex parte (as with a United States injunction). Opp. at Ex. 1, 8. Francisco Jr. entirely ignores his own allegation that the *amparo* proceeding was transferred to a different judge, then successfully appealed by Francisco Jr., then reinstated by the Constitutional Court of Guatemala. Crossclaim, ¶¶ 39, 54-55. The process is similar to how the United States court system would handle an injunction with corresponding appeals.

Fourth, the central issue in this dispute is a matter of foreign law and there is a certainty of conflicting judgments if Francisco Jr. prevails in this Court. Francisco Jr.'s Crossclaim is premised upon a purported fraud by Barbara and Valerie on the Guatemalan courts to obtain control of

4

Pamasa.  If Francisco Jr. prevails, then the final judgment of the Constitutional Court of Guatemala (that resulted in Barbara and Valerie controlling Pamasa) would directly conflict with this Court's judgment (that Barbara and Valerie "fraudulently" obtained control of Pamasa and thus that Francisco Jr. now controls Pamasa). You would have a scenario where, on one hand, Barbara and Valerie would be recognized as the administrators of Pamasa in Guatemala and, on the other hand, Francisco Jr. would be in control of Pamasa in the United States. Such a scenario would completely defeat the very purpose of the underlying interpleader claim by Banco Santander.  The bank would now be facing two competing orders from two different courts in two different countries, which "raise major concerns of international comity." *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1521 (11th Cir. 1994). That is precisely what comity is designed to prevent.

**II.      <u>Francisco Jr.'s Claims are Barred by Res Judicata.</u>**

Francisco Jr.'s claims are barred by res judicata because the courts of Guatemala found that Barbara and Valerie control Pamasa. Neither Francisco Jr. nor his expert contest this fact.

Instead, Francisco Jr. argues that this Court should ignore the *amparo* because it is allegedly provisional. Francisco Jr.'s expert quotes the Constitutional Court's finding that its decision will not "affect the operation of [Pamasa], whose General Shareholders' Meetings may decide, taking into account that the representation of those corporations will be exercised in accordance with the provisions of the operative part of this ruling, until the relevant jurisdiction declares who should act as the definitive representative of [Pamasa]." Opp. at Ex. 1, 14. Francisco Jr. admits that this ruling gave Barbara and Valerie control of Pamasa, and alleges that "[u]sing this control, in December 2022 and January 2024, [Barbara and Valerie] convened General Shareholders' Meetings for the entities—without proper notice as required under Guatemalan law—to ratify their takeover, thus entrenching themselves as the managers and legal representatives of the entities." Opp., 7. Francisco Jr. does not allege that any "relevant jurisdiction" has decided otherwise.

In any event, Francisco Jr.'s opinions on res judicata in Guatemala are of no consequence because res judicata is a procedural issue and thus foreign law does not apply. *See Phila. Fin. Mgmt. of S.F., LLC v. DJSP Enters., Inc.*, 227 So. 3d 612, 617 (Fla. 4th DCA 2017). Under Florida and federal res judicata principles, Francisco Jr. cannot relitigate the issue decided in Guatemala, and his claims should be dismissed on that basis.

Homer Bonner Jacobs Ortiz, P.A.

1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131

305 350 5100 | www.homerbonner.com

### III.   Francisco Jr. is Collaterally Estopped from Bringing His Claims.

Francisco Jr. acknowledges that for collateral estoppel, no final judgment is required; instead, collateral estoppel only requires a "prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Opp. 17 (quoting *Christo v. Padgett*, 223 F.3d 1324, 1339 n.47 (11th Cir. 2000)). Under the Restatement of Judgments, cited with approval in *Christo*, factors for finality include "that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal . . . ." *Restatement 2d of Judgments*, § 13. The main issue "is whether the conclusion in question is procedurally definite . . . ." *See id.* Here, the Constitutional Court's reasoned opinion following an appeal is procedurally definitive in establishing control of Pamasa for Barbara and Valerie. Francisco Jr.'s argument that there could theoretically be a change in control at some undetermined point in the future does not mean that the issue is undecided.

### IV.   Pamasa Owns Its Account.

Francisco Jr. somehow takes issue with a fundamental fact in this case—that Pamasa owns its own Account. In the Motion to Dismiss, Pamasa noted the black-letter rule that assets of a company belong to a company, not its owners. *See Doctor Rooter Supply & Serv. v. McVay*, 226 So. 3d 1068, 1072-73 (Fla. 5th DCA 2017) (holding that a shareholder's "rights do not include a pro-rata interest in corporate assets" because a "corporation is a separate, legally recognized entity that holds title to its assets . . . until payments are made for services or as dividends."). Everyone agrees that Pamasa is the holder of the Account. As such, the Account belongs to Pamasa.

Not surprisingly, Francisco Jr. refuses to accept this fact. Instead, he argues that "especially in the case of single-shareholder corporations such as Pamasa, *McVay **confirms*** that shareholders do, in fact, have a direct interest in the corporation's assets." Opp. 11, n. 3. *McVay* "confirms" no such radical concept. In *McVay*, a husband and wife owned 100% of the corporation, and the court refused to consider the corporation's assets as belonging to them individually. *McVay*, 226 So. 3d at 7072. There are countless cases confirming the basic rule that assets of an entity belong to the entity. *See, e.g., S & A Prop. Inv. Servs., LLC v. Garcia*, 360 So. 3d 432, 437 (Fla. 3d DCA 2023) ("It is basic hornbook law that corporate property is vested in the corporation itself, and not in the individual stockholders, *who have neither legal nor equitable title in the corporate property*.") (quoting *Brevard Cnty. v. Ramsey*, 658 So. 2d 1190, 1196 (Fla. 5th DCA 1995))). Francisco Jr.'s entire Crossclaim is premised on the radical concept that the funds in Pamasa's Account were

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

really his father's funds, not Pamasa's, because that is what his father allegedly intended. ECF No. 23, ¶ 84. To be clear, the funds in Pamasa's account are Pamasa's funds. As this flawed theory serves as the foundation for all of Francisco Jr.'s claims, the Crossclaim should be dismissed in its entirety.

**V.       The Court Lacks Subject Matter Jurisdiction Over Francisco Jr.'s Claims.**

Francisco Jr. argues that the Court has subject matter jurisdiction because "in a Rule 22 interpleader, complete diversity is required only between the stakeholder (BSI) and the claimants—not among the claimants themselves." Opp., 19. Of course, the Court has subject matter jurisdiction over Banco Santander's interpleader claim. But that does not mean that the Court has supplemental jurisdiction over Francisco Jr.'s kitchen-sink Crossclaim alleging fraud on the courts of Guatemala, tortious interference with an expectancy in Guatemala, and other related claims.

Francisco Jr. then contends that Federal Rule of Civil Procedure 13(g) gives the Court subject matter jurisdiction over his Crossclaim. It does not. The Federal Rules of Civil Procedure "do not extend or limit the jurisdiction of the district court . . . ." Fed. R. Civ. P. 82. As a result, "permission to join a claim pursuant to Rule 13(g) does not, of itself, create federal jurisdiction over that claim." *John Hancock Life Ins. Co. v. Schmahl*, No. 8:12-CV-754-T-TGW, 2014 U.S. Dist. LEXIS 113012, at *16-17 (M.D. Fla. Aug. 6, 2014). "Such a consequence would be untenable inasmuch as the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction." *Id.* "Rather, there must be an independent basis for subject matter jurisdiction over the crossclaim, or it must fall under the Court's supplemental jurisdiction." *Id.*

Francisco Jr. also argues that *Dean Witter Reynolds Inc. v. Fernandez*, 489 F. Supp. 434, 440 (S.D. Fla. 1979), supports supplemental jurisdiction. Opp., 19. It does not. In *Fernandez*, a deposit for a commodities purchase was interpleaded, and the court allowed certain parties to litigate the entire purchase and sale dispute. *Fernandez*, 489 F. Supp. 434 at 440. Here, unlike in *Fernandez*, Francisco Jr. does not make any colorable claim to the Account which could be brought in Florida. Instead, Francisco Jr. admits that Barbara and Valerie control Pamasa but he wants to collaterally attack a Guatemalan order that gave them control. Crossclaim, ¶¶ 45, 55. This case is more akin to *Schmahl*, where "the interpleader action is resolved simply by reference to the undisputed terms of" the documents at issue, and "[i]n contrast, the crossclaim raises a multitude of factual and legal issues unrelated to the original claim, and the transactions underlying the

7

crossclaim also have no connection to the original claim." 2014 U.S. Dist. LEXIS 113012, at \*19. In sum, Francisco Jr.'s claims regarding purported conduct in Guatemala must be brought in Guatemala. Francisco Jr. further baselessly claims that Barbara and Valerie agreed via an agreed proposed order in this case to this Court's subject matter jurisdiction. That is impossible because "[p]arties cannot consent to federal subject matter jurisdiction; it is a question of law for the Court to decide." *Permanent Gen. Assurance Corp. v. Byrd*, No. 6:17-cv-1363-Orl-31TBS, 2017 U.S. Dist. LEXIS 149248, at \*2 (M.D. Fla. Aug. 23, 2017). Regardless, Barbara and Valerie only agreed to a proposed order in this case that the Court "shall retain jurisdiction over any claims by and between the interpleader defendants **relating to control of the Account**." ECF No. 12-4 (emphasis added). They did not agree that the Court would have subject matter jurisdiction over Francisco Jr.'s unrelated claims for fraud and tortious interference with an inheritance.

Next, Francisco Jr. contends that the Court should choose to exercise jurisdiction over his claims because they are not "novel or complex." Wrong. As detailed above, the Crossclaim is essentially a collateral attack on the Guatemalan courts, asking this Court to find that they **"got it wrong."** Opp. at Ex. 1, 13 (emphasis added). Obviously, an examination by this Court of the Guatemalan orders, examination of witnesses in Guatemala, examination of Guatemalan law, and a review of the entire Guatemalan judicial system would take years and would be a complex undertaking.

Finally, Francisco Jr. argues that the Court should choose to exercise supplemental jurisdiction because the "fraud claims also do not 'predominate' over the interpleader dispute; they inform it." Opp., 20. Francisco Jr. ignores the posture of this case. Banco Santander sought a determination of who controls Pamasa. Barbara, Valerie, and Pamasa's Crossclaim sought the exact same declaration. Francisco Jr.'s Crossclaim asserts that it does not matter that Barbara and Valerie control Pamasa. He claims that *they should not control* because they were allegedly involved in a fraud upon the Guatemalan courts. That argument not only predominates over the control issue, but it swallows it whole and renders the interpleader dispute essentially irrelevant.

**VI.    The Crossclaim Does Not Allege Personal Jurisdiction.**

The Court lacks personal jurisdiction over Barbara, Valerie, or Pamasa vis-a-vis Francisco Jr's Crossclaim. He admits that there is no long-arm personal jurisdiction over Barbara, Valerie, or Pamasa—all residents of Guatemala. Further, Francisco Jr. acknowledges that by filing an action, a party does not subject itself to personal jurisdiction for counterclaims that did not arise

8

out of the same transaction or occurrence. *See Edwards v. Johnson,* 569 So. 2d 473, 474 (Fla. 1st DCA 1990) (by filing an action, the plaintiff "did not thereby automatically waive any objections to personal jurisdiction he might have as to matters raised in a permissive counterclaim"); *Frazier v. Frazier*, 442 So. 2d 1116, 1117 (Fla. 4th DCA 1983) (holding that plaintiff's action to enforce a judgment in Florida did not subject herself to jurisdiction of loosely related counterclaims).

Here, Banco Santander's Interpleader Complaint solely relates to control of Pamasa. *See* ECF No. 12, ¶ 27 ("BSI is unable to determine control of Pamasa and the Account . . . [thus] BSI seeks a determination from this Court as to the proper party or parties entitled to control the Account and direct the disposition of its assets."). Since the Account is based in Miami, Pamasa had no choice but to file its complaint against Banco Santander in this Court and then Pamasa, Barbara, and Valerie had no choice but to file their Crossclaim against Francisco Jr., asking "that the Court enter a declaratory judgment in their favor, affirming that Barbara and Valerie Mansilla Ortiz **control Pamasa** and, therefore, among other things, **control Pamasa's account** at Santander and are entitled to access the funds in the account." *See* ECF No. 22, ¶ 24 (emphasis added). The Crossclaim of Barbara, Valerie, and Pamasa precisely mirrors the Interpleader Complaint.

On the other hand, Francisco Jr.'s Crossclaim seeks to dramatically expand the dispute, beyond who controls Pamasa, to (1) a declaration that Francisco Jr. *should have* obtained control Pamasa in the Guatemala but for Barbara and Valerie's purported fraudulent acts in the Guatemalan courts, (2) a finding that Barbara and Valerie fraudulently "ousted" Mansilla Córdova and Francisco Jr. from Agrícola El Amate, (3) a holding that Valerie and Barbra schemed to "steal[] their father's assets that were being held by Pamasa and Agrícola El Amate by transferring them to newly created entities under their exclusive control," (4) "[a] finding that Valerie and Bárbara are liable to Francisco for fraud" dating back to October 2018, and (5) "[a] finding that Valerie and Bárbara are liable to Francisco for intentionally interfering with his inheritance." Crossclaim, ¶¶ 72-93. Pamasa, Barbara and Valerie's Crossclaim did not subject them to personal jurisdiction of a court in Florida to litigate these far-fetched claims between Guatemalan individuals, involving activities in Guatemala, Guatemalan law, and Guatemalan assets.

## VII. Guatemala is the More Convenient Forum for Plaintiff's Claims.

### A. There is No Significant Evidence of Serious Corruption in Guatemala.

Francisco Jr. admits that he must produce "significant evidence" of "serious corruption or delay" that would render Guatemala an inconvenient forum to litigate his Crossclaim. At the

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

motion to dismiss stage, courts recognize that "[i]n cases 'where the complaint itself shows on its face that a forum non conveniens transfer is warranted,' the trial court must dismiss the action where plaintiff fails to present evidence supporting its choice of forum." *WEG Industrias, S.A. v. Compania De Seguros Generales Granai*, 937 So. 2d 248, 254 (Fla. 3d DCA 2006) (quoting *Botton v. Elbaz,* 722 So. 2d 974, 975 (Fla. 4th DCA 1999)). In the face of this high burden, Francisco Jr. presents no evidence at all.

Francisco Jr. first argues that the Supreme Court of Guatemala is purportedly investigating Judge Umaña Calderón for fraud (the judge that first issued the *amparo*, later affirmed by the Constitutional Court). Francisco Jr. has not presented any admissible evidence of this purported investigation. And even if the investigation did exist, an investigation is not proof of corruption. And in any event, there is no allegation that the five-member panel of the Constitutional Court that affirmed the *amparo* were all corrupt.

Francisco Jr. next argues that Guatemalan courts in general are so corrupt that they categorically cannot hear his claims. But even Francisco Jr.'s expert is unwilling to go so far, and his report is the only "evidence" of "serious corruption" in Guatemala. As the Eleventh Circuit has concluded, "[w]hile the Guatemalan courts are not perfect, '[a]n adequate forum need not be a perfect forum.'" *LISA, S.A. v. Mayorga*, 240 F. App'x 822, 824 (11th Cir. 2007)(citation omitted); *see also Villeda Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1290-91 (11th Cir. 2009) (plaintiffs "contend that Guatemala is not an adequate forum . . . because Guatemalan courts are beset by corruption and are ill-equipped to adjudicate a case, like this one, that implicates political conditions and officials. We are unpersuaded."). Francisco Jr.'s expert writes that "[t]he cumulative effect of [Guatemala's] conditions is a judicial environment in which litigants cannot **always reliably expect** proceedings to be conducted with impartiality and procedural fairness." Opp. at Ex. 1, 6-7 (emphasis added). "While Guatemala's legal framework formally guarantees judicial independence and due process, the reality is that this is **sometimes aspirational**." *Id.* at 7 (emphasis added). That is it. Those statements could be true for virtually all judicial systems. In fact, litigants who lose a case in the United States often make the same kind of accusations. In short, even Francisco Jr.'s expert does not conclude that Guatemalan courts suffer from "serious corruption" nor any conclusion which supports a finding that Guatemala is an inconvenient forum. *See* Opp. at Ex. 1.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

### B.      Private Interest Factors Weigh in Favor of Dismissal.

Contrary to Francisco's Jr. assertions, private interest factors are not waived and, in any event, the Motion to Dismiss does address private factors. *See* Motion to Dismiss, 14-15. But extensive discussion is unnecessary on this issue because Francisco Jr.'s claims literally have ***nothing*** *to do with Florida*. None of the alleged conduct took place in Florida. *All* of the alleged conduct occurred in Guatemala. *All* of the parties are Guatemalan.

The private interest factors are "[1] the relative ease of access to sources of proof; [2] the availability of compulsory processes for unwilling witnesses; [3] the cost of witnesses . . . and all other practical problems relating to the ease, expeditiousness, and expense of trial." *McLane v. Los Suenos Marriott Ocean & Golf Resort*, 476 F. App'x 831, 833 (11th Cir. 2012).

First, most, if not all, of the evidence, if any, is in Guatemala, as the purported fraud was purportedly committed by Guatemalans (Barbara and Valerie) in Guatemala in Guatemalan courts.

Second, Guatemala has compulsory process over relevant witnesses; this Court does not. *See, e.g., Aldana v. Fresh Del Monte Produce, Inc.*, No. 01-3399-CIV-MORE, 2007 U.S. Dist. LEXIS 77020, at *14 (S.D. Fla. Oct. 16, 2007) ("None of the witnesses involved in the case, except the Plaintiffs, are within the reach of this Court's compulsory process" because they are in Guatemala, thus "those witnesses would be unable to be compelled to attend this Court.").

Third, for the same reason, the costs and expenses are plainly higher to litigate here than in Guatemala, as there is no connection between Francisco Jr.'s Crossclaim and Florida. *See Lisa, S.A. v. Mayorga*, 441 F. Supp. 2d 1233, 1240 (S.D. Fla. 2006) ("[T]he costs associated with any potential litigation would be far greater if this action were to proceed in Florida" because "the vast majority of potential witnesses and documents are located in Guatemala.").

Tellingly, Francisco Jr. is unable to muster any private factors that favor litigating his crossclaim in Florida. This is the entirety of his analysis: "the private interest factors do not weigh in favor of dismissal, as the relevant parties, and thus the relevant evidence, are before the Court as a result of the Sisters' own claims." Opp., 23. Put simply, Francisco Jr's argument is this: keep the case because the parties are already here. That is not the law—and if it were, forum non conveniens would cease to exist. The Court should uphold the forum non conveniens doctrine and dismiss this case in favor of the better alternative forum—Guatemala.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

WHEREFORE, Pamasa and Barbara and Valerie Mansilla Ortiz request that this Court enter an Order dismissing Francisco Mansilla Ortiz's Crossclaim with prejudice and granting any other relief that this Court deems appropriate.

Dated: March 20, 2026

Respectfully submitted:

Homer Bonner Jacobs Ortiz, P.A.
Attorneys for Pamasa S.A.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5100
Fax: (305) 372-2738

By:    /s/ José A. Ortiz
       José A. Ortiz, Esq.
       Email: jortiz@homerbonner.com
       Florida Bar No. 182321
       Charles Brumby, Esq.
       Email: cbrumby@homerbonner.com
       Florida Bar No. 0084054
       Felix Mendez-Burgos Esq.
       Email: fmendez-
       burgos@homerbonner.com
       Florida Bar No. 1035609

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

## CERTIFICATE OF SERVICE

I hereby certify that, on March 20, 2026, I filed the foregoing document through CM/ECF, which will cause a copy of this document to be delivered, by Notice of Electronic Filing, to all parties and counsel of record.

By: */s/ Felix Mendez-Burgos*
Felix Mendez-Burgos, Esq.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com