**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-23861-ALTMAN**

**BANCO**
**SANTANDER INTERNATIONAL**,

*Interpleader*,

*v.*

**PAMASA S.A., BARBARA MANSILLA ORTIZ,**
**VALERIE MANSILLA ORTIZ,** *and*
**FRANCISCO OMAR MANSILLA ORTIZ**,

*Interpleader-Defendants*,

_____/

**FRANCISCO OMAR MANSILLA ORTIZ**,

*Cross-claimant*,

*v.*

**PAMASA S.A., BARBARA MANSILLA ORTIZ,** *and*
**VALERIE MANSILLA ORTIZ**,

*Cross-Defendants*,

_____/

## ORDER ON MOTION TO DISMISS

In this lawsuit, the Guatemalan heirs to a Guatemalan rum fortune are fighting over the power to control a Guatemalan company. In doing so, the parties (all Guatemalan) accuse each other of engaging in a years-long fraud (and some forgery) in Guatemala. Because all the parties, witnesses, and evidence in this case are in Guatemala—and since the parties agree that Guatemalan law governs this dispute—we now dismiss this case under the doctrine of *forum non conveniens* (FNC).

**BACKGROUND**

## I.     The Procedural History

This action began when Banco Santander International ("Santander") brought a Rule 22 interpleader action to resolve a bitter dispute among Guatemalan liquor heirs. *See* Interpleader Complaint [ECF No. 12]; *see also* November 4, 2026, Paperless Minutes [ECF No. 17]; Order after Status Conference [ECF No. 18].[1] The heirs quarrel over control of Pamasa S.A. ("Pamasa"), a corporation that's incorporated (and which principally operates) in Guatemala. *See* Interpleader Compl. at 5. Pamasa holds and controls an account at Santander in Miami (the "Account"), where it has deposited millions of dollars. "Due to the unresolved and competing claims of authority over Pamasa and its Account, and the risk of multiple liability," Santander filed the Interpleader Complaint, asking us to decide who controls Pamasa and, consequently, who may access the Account. *Id.* ¶ 22. The Interpleader Complaint names Pamasa, Francisco Mansilla Ortiz ("Francisco"), Barbara Mansilla Ortiz, and Valerie Mansilla Oritz as Defendants.

We have federal-question jurisdiction over the Interpleader Complaint under the Edge Act of 1913. *See* 12 U.S.C. § 632;[2] *see also Arazi v. Standard Chartered Bank Int'l (Ams.) Ltd.*, 2013 WL 12094185, at *1 (S.D. Fla. Apr. 29, 2013) (Graham, J.) ("Under the Edge Act of 1913, 12 U.S.C. § 632, federal district courts have original subject matter jurisdiction over any claim that arises out of international banking transactions or any international financial transactions."); *cf.* Interpleader Compl. ¶ 7 ("Jurisdiction is proper because the action arises under Rule 22 . . . and the Edge Act[.]").

---

[1] "Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." FED. R. CIV. P. 22(a)(1).

[2] The Edge act provides that "the district courts of the United States shall have original jurisdiction" over "all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries[.]" 12 U.S.C. § 632.

Francisco responded to the Interpleader Complaint by filing cross-claims against Barbara and Valerie (the "Sisters"), asserting three state-law causes of action: Fraud (Count I), *see* Cross Complaint [ECF No. 23] ¶¶ 71–80; Intentional Interference with Inheritance (Count II), *see id.* ¶¶ 81–90; and Declaratory Judgment (Count III), *see id.* ¶¶ 91–93. In his Cross Complaint, Francisco alleges that the Sisters fraudulently obtained control over Pamasa by, among other things, having their father declared incapacitated and forging his signature—all of which (Francisco says) they accomplished in Guatemala. The Sisters now move to dismiss the Cross Complaint. *See* Motion to Dismiss (the "MTD") [ECF No. 30].[3]

## II.     The Facts[4]

"Mansilla Córdova was an incredibly successful Guatemalan businessman" and a magnate of the "Guatemalan liquor industry." Cross Complaint ¶ 13. As relevant here, "he was 24% shareholder of Industrias Licoreras de Guatemala ('ILG'), a private alcohol distillery best known for producing such world-renowned rums as Ron Zacapa and Ron Botran[.]" *Ibid.* Córdova's son, Francisco, and his daughters, Barbara and Valerie, are our Interpleader Defendants. *See* Interpleader Complaint ¶ 12 ("Barbara, Valerie, and Francisco are Mr. Mansilla Córdova's children."); *see also* Francisco's Answer

---

[3] The MTD is fully briefed and ripe for adjudication. *See* Response to MTD ("Response") [ECF No. 40]; Reply in Support of MTD ("Reply") [ECF No. 50]. Francisco attached to his Response the "Expert Report of Gabriel Orellana Rojas" ("Orellana Rep.") [ECF No. 40-1], who describes himself as an expert on Guatemalan law, *see id.* at 2 ("I have been engaged as an expert on Guatemalan law, and the scope of the opinions expressed herein pertain to issues that I have been instructed are germane to the underlying dispute."). But "a party cannot amend a complaint by attaching documents to a response to a motion to dismiss." *Jallali v. Nova Se. Univ., Inc.*, 486 F. App'x 765, 767 (11th Cir. 2012). In reviewing a motion to dismiss, after all, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Francisco thus cannot rely on the Orellana Report here.

[4] We accept the allegations of the Cross Complaint as true for purposes of this Order. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but 'legal conclusions without adequate factual support are entitled to no assumption of truth.'" (quoting *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (cleaned up))).

to Interpleader Complaint ("Answer to Interpleader") [ECF No. 23] (admitting this allegation). At some point before October 2018, Córdova "had decided that his daughters' inheritance would contain strict conditions making it impossible for them or their husbands to ever manage the family businesses." Cross Compl. ¶ 15. "In apparent retaliation for those restrictions, in October 2018," the Sisters "attempted to usurp their aging father's control of [his trust]" by "[f]orging his signature" and "fraudulently amend[ing] the [trust's] bylaws to add a provision" that allowed the Sisters, as secondary beneficiaries, "to invoke a mechanism for having [their father] declared legally incapacitated." *Id.* ¶ 16.

In July 2020, amidst a flurry of estate planning, Córdova's trust "transferred the majority of its assets to Pamasa," Answer to Interpleader ¶ 20, including the Account at Santander, *see id.* ¶ 21. "Following the transfer[ ], the balance of the Account was approximately $7,600,000." *Ibid.* At that time, Pamasa "did not have any current or contemplated purpose other than to hold [Córdova's] personal assets. The transfer was made as an estate planning transaction to make it easier to pass on his inheritance." *Id.* ¶ 23. "Córdova was appointed [the] President and Legal Representative [of Pamasa], Franciso was appointed [the] Vice President and Legal Representative," and the Sisters were appointed as board members. *Id.* ¶ 18. Francisco and the Sisters thus each had some role in Pamasa. The trust "was then voluntarily dissolved." *Id.* ¶ 20. At this point, "the balance of the Account was approximately $7,600,000." *Id.* ¶ 21.

Here's where things get messy. "On April 11, 2021, Valerie filed an *amparo* against the Board of Directors of Pamasa[.]" *Id.* ¶ 28. "In her capacity as [Board] Member [ ], Valerie claimed to be in fear of the imminent violation of [Pamasa's] property rights—*i.e.*, the theft of the entities' assets—by her father, Mansilla Córdova[.]" *Id.* ¶ 29. Valerie alleged that Francisco and a "dishonest notary" enabled "this imminent theft." *Ibid.* "On April 12, 2021, the Santa Lucía Court granted the *amparo* [(the

'Provisional Amparo')] on an *ex parte* basis." *Id.* ¶ 37. "Thus, just like that, Mansilla Córdova and Francisco were ousted from their positions" at Pamasa. *Id.* ¶ 39.[5]

Unfortunately for Santander, it landed in the crosshairs of this family saga. "On April 14, 2021, two days after the Provisional Amparo was entered, Bárbara wrote to [Santander] and informed the Bank of the [Provisional] Amparo, and instructed the Bank that only Valerie and herself were authorized to provide instructions on behalf of Pamasa." *Id.* ¶ 41. That same day, "Córdova wrote to [Santander] regarding the Account and requested the cancellation of a certificate of deposit, along with other related fees. He directed that a check for the proceeds instead be issued in his name." *Id.* ¶ 42. Then, on June 18, 2021, "Bárbara wrote a follow-up letter to [Santander] and demanded that Mansilla Córdova and Franciso be removed as signatories on the Account." *Id.* ¶ 43. "On October 14, 2021, [Santander] responded and advised that it had placed a block on the Account because of conflicting claims regarding who was authorized to act on behalf of Pamasa." *Id.* ¶ 44. Santander "consistently informed" the parties that the block "would not be lifted absent an order from a U.S. court instructing the Bank to do so." *Id.* ¶ 25. Santander "left the timing and manner of obtaining such an order to the parties, given the ongoing litigation and uncertainty in the Guatemalan courts." *Ibid.* The Account remains frozen.

---

[5] Francisco says that the "*amparo* suffered from blatant procedural and substantive deficiencies and irregularities." Cross Compl. ¶ 30. *First*, he claims that "Valerie filed her petition in a *criminal* court in a small province in southern Guatemala with no connection to the parties or the dispute: the Court of First Instance for Criminal Matters, Drug Activity, and Environmental Offenses of Santa Lucía Cotzumalguapa, Escuintla[.]" *Ibid. Second*, he contends that "Valerie alleged a bizarre blend of deceit and incapacitation on the part of her then-93-year-old father," whereby he "had purposefully orchestrated an unlawful 'scheme' to transfer [Pamasa's] assets to himself . . . in violation of conflict-of-interest provisions in the entities' governing documents and Guatemala's commercial code." *Id.* ¶ 31. As Francisco sees it, the *amparo* "was a desperate attempt to manufacture the appearance of impropriety where none existed[.]" *Id.* ¶ 36. Because we dismiss this action under the doctrine of *forum non conveniens*, we take no position on the merits of these allegations. *See Vasquez v. YII Shipping Co., Ltd.*, 692 F.3d 1192, 1199 (11th Cir. 2012) ("'[F]orum non conveniens* is nothing more or less than a supervening venue provision' and is 'a matter that goes to process rather than substantive rights.'" (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)).

Back in Guatemala, "[w]ith the Provisional Amparo in full force and effect, the underlying proceeding was eventually transferred from the Santa Lucía Court to the Seventh Court of First Instance for Civil Matters of Guatemala."[6] *Id.* ¶ 54. "On May 24, 2022, more than a year after its issuance, the Seventh Civil Court dismissed the [Provisional] Amparo, reasoning that a constitutional protection action was premature, as ordinary procedures had not been exhausted." *Ibid.* (citing May 24, 2022, Seventh Civil Court Order [ECF No. 23-3]). "Valerie (and Bárbara, who had intervened as a party in the interim) appealed, and on July 18, 2022, the Constitutional Court of Guatemala reversed the dismissal and reinstated the Provisional Amparo." *Id.* ¶ 55. In so doing, the Constitutional Order held as follows:

> The petitioner for protection, like any individual, must be guaranteed any right such as those established in Articles 2, 29, and 203, second paragraph of the Political Constitution of the Republic. And to preserve the proper enjoyment of those rights, it is determined in this judgment that subject to the final judicial decisions that must be assumed in the different trials that must be promoted in the ordinary jurisdiction by the interested shareholders of. . . Pamasa, Soeciedad Anonima, it it [sic] necessary to cease the effects of the acts reported in this Constitutional Protection since there is clear evidence that it has not yet been determined with absolute certainty who should assume the representation of the Board of Directors of both commercial entities. . . .
>
> It should be noted that this decision will under no circumstances affect the operation of the aforementioned corporations, whose General Shareholders' Meetings may decide, taking into account that the representation of those corporations will be exercised in accordance with the provisions of the operative part of this ruling, until the relevant jurisdiction declares who should act as the definitive representative of the related entities.

Constitutional Order [ECF No. 23-4][7] at 45–46. The court further noted that "all of this could be the subject of claims before the ordinary jurisdiction through the channels provided for in the adjective

---

[6] We'll refer to this court as the "Seventh Civil Court."

[7] We can consider the Constitutional Order, which is attached to the Cross Complaint, without converting the MTD into a motion for summary judgment. *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (explaining that "documents attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal district court in ruling on a motion to dismiss"); *see also* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); FED. R. CIV. P. 13(g) (describing a "crossclaim against a coparty" as a "pleading"); *cf. Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1224 n.4 (S.D. Fla. 2023)

6

civil and commercial legislation[.]" *Id.* at 45. In other words, the Constitutional Order functioned as an injunction against Córdova's recent transfers and preserved the parties' rights to seek relief through the Guatemalan legal system.

According to Francisco, "[f]ollowing the Constitutional Court's July 18, 2022 Order, Valerie and Bárbara convened shareholders' meetings in December 2022 and January 2024—failing to provide the meeting notice required under Guatemalan law—at which they purported to personally ratify the corporate takeover that they had fraudulently orchestrated." Cross Compl. ¶ 63. "Today, Guatemala's Commercial Registry reflects that Valerie acts as the General Manager and Bárbara as the Sole Administrator of Pamasa[.]" *Id.* ¶ 64.

Seeking redress, Francisco filed crossclaims against the Sisters here, seeking declaratory relief and alleging fraud and intentional interference with his inheritance. "In short," he says, "Mansilla Córdova and Francisco were stripped of their rights and property—in a fraudulent scheme that is being perpetuated to this very day—based on frivolous and conclusory allegations, and without any court ever making any findings of wrongdoing whatsoever against either of them." *Id.* ¶ 69.

## THE LAW

*Forum non conveniens* ("FNC") "is an ancient common law doctrine that permits a court to decline jurisdiction over a case, even if personal jurisdiction and venue are otherwise proper, when there is a more convenient forum for the case to be litigated." *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1303 n.4 (11th Cir. 2002); *see also Boyd v. Deadwood Tobacco Co.*, 2024 WL 940822, at *2 (S.D. Fla. Mar. 5, 2024) (Altman, J.) ("Under the doctrine of *forum non conveniens* ('FNC'), a district court has the inherent power to decline to exercise jurisdiction even when venue is proper." (cleaned up)). To show that a case should be dismissed under the doctrine of FNC, "the moving party must demonstrate that

---

(Altman, J.) ("We can consider these documents, which *are* attached to the SAC, without converting the MTD into a motion for summary judgment.").

(1) an adequate alternative forum is available, (2) the public and private interest factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001). A district court may dismiss a case under the doctrine of FNC before resolving questions of subject-matter jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."); *id.* at 425 ("In particular, a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.").[8]

## ANALYSIS

The Sisters offer a long list of arguments for dismissal. *See* MTD at 3 (listing fourteen reasons for their view that "Francisco Jr.'s claims should be dismissed with prejudice"). Because we agree that our Court isn't the proper forum for this case, we needn't reach their other arguments.

---

[8] As we've explained, we only have supplemental jurisdiction over the Cross Complaint by virtue of our jurisdiction over the Interpleader Complaint. But we may "decline to exercise supplemental jurisdiction over a claim" if it "substantially predominates over the claim or claims over which the district court has original jurisdiction" or where "there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1), (2). If, after examining the factors listed in § 1367(c), the district court "decides that it has the discretion . . . to decline jurisdiction . . . [,] it should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience, in deciding whether or not to exercise that jurisdiction." *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994). "[I]n some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction." *Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994). In the Eleventh Circuit, we consider three "goals" in deciding whether to decline supplemental jurisdiction over foreign disputes: "(1) a proper level of respect for the acts of our fellow sovereign nations—a rather vague concept referred to in American jurisprudence as international comity; (2) fairness to litigants; and (3) efficient use of scarce judicial resources." *Ibid.*
So, while we're dismissing the Cross Complaint under the doctrine of FNC, we'd very likely decline to exercise supplemental jurisdiction over that pleading anyway, because of the extent to which it relies on foreign law and foreign proof. *See Cute v. ICC Cap. Mgmt., Inc.*, 2010 WL 11626589, at *2 (M.D. Fla. Mar. 18, 2010) (Conway, J.) ("Courts considering supplemental jurisdiction have declined to exercise jurisdiction in cases in which the state claims require different or foreign elements of proof[.]").

As we've suggested, the Sisters ask us to dismiss the Cross Complaint because Francisco's "claims belong in Guatemala, not Florida." *Id.* at 14. They (correctly) tell us that we "should dismiss a claim for *forum non conveniens* when '(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *Ibid.* (quoting *Leon*, 251 F.3d at 1310–11). "All three of those elements," the Sisters continue, "are present here." *Ibid.* We agree.

### I.      Guatemala is an adequate alternative forum

"The first prong of the *forum non conveniens* inquiry simply asks whether the alternative forum is 'adequate' and 'available.'" *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1290 (11th Cir. 2009) (quoting *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 937 (11th Cir. 2005)). "As we have observed, availability and adequacy are separate issues." *Ibid.* (citing *Leon*, 251 F.3d at 1311). "In order to be available, the foreign court must be able to 'assert jurisdiction over the litigation sought to be transferred.'" *Ibid.* (quoting *Leon*, 251 F.3d at 1311). "As for adequacy, we have observed that it is only in 'rare circumstances' where 'the remedy offered by the other forum is clearly unsatisfactory,' that the alternative forum may be regarded as inadequate." *Ibid.* (quoting *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001)). "The alternative forum prong of the analysis generally 'will be satisfied when the defendant is amenable to process in the other jurisdiction.'" *Satz*, 244 F.3d at 1282 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). Indeed, the Supreme Court has instructed us that "a remedy is inadequate when it amounts to 'no remedy at all.'" *Id.* at 1283 (quoting *Piper*, 454 U.S. at 254).

Guatemala is plainly an "available" forum. The Sisters are citizens of Guatemala. *See* Cross Compl. ¶ 6 ("Interpleader and Cross-Defendant Bárbara Mansilla Ortiz is a Guatemalan citizen who upon information and belief resides in Guatemala City, Guatemala."); *id.* ¶ 7 ("Interpleader and Cross-Defendant Valerie Mansilla Ortiz is a Guatemalan citizen who upon information and belief resides in

Guatemala City, Guatemala."). And Francisco never suggests that they wouldn't be subject to process there. *See generally* Response; Cross Compl.

Instead, Francisco argues that "Guatemala is not an adequate alternative forum" because there is "systemic corruption in the Guatemalan judiciary." Response at 22. To support this claim, Francisco tells us three things. *First*, he says that "Judge Umaña, who issued the Provisional Amparo, is now charged in a criminal case for collusion and abuse of authority[.]" *Id.* at 13; *see also* Cross Compl. ¶ 67 ("Guatemala's Supreme Court of Justice lifted the presumption of judicial immunity surrounding Judge José Wilfrido Umaña Calderón, the Santa Lucía Judge who granted the Provisional Amparo in April 2021."). *Second*, he relies on the "Expert Report of Gabriel Orellana Rojas" ("Orellana Rep.") [ECF No. 40-1], attached to his Response, for the proposition that, "in Guatemala's judicial system[,] 'litigants cannot always reliably expect proceedings to be conducted with impartiality and procedural fairness.'" Response at 14 (quoting Orellana Rep. at 6–7); *see also* Cross Compl. ¶ 66 ("On December 1, 2025, the Inter-American Commission on Human Rights published an extensive report on human rights issues in Guatemala, in which it described in detail a judiciary lacking in independence and impartiality."). *Third*, Francisco believes that the Provisional Amparo proceeding was riddled with "flagrant due process violations[.]" Response at 15; *see also* Cross Compl. ¶ 93 ("The purported authorities by which Valerie and Bárbara claim to act on behalf of Pamasa are not entitled to recognition, because *inter alia*, they were procured through fraud, were not rendered in a system that provided impartiality or procedures compatible with the requirements of due process of law, did not provide notice and/or an opportunity for [ ] Córdova or Francisco to defend themselves, and are repugnant to the public policy of this state[.]"). None of these arguments undermines our view that Guatemala is an adequate forum.

"An adequate forum need not be a perfect forum." *Satz*, 244 F.3d at 1283. In this Circuit, an alternative forum is "presumed 'adequate' unless the plaintiff makes some showing to the contrary."

10

*J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.*, 515 F. Supp. 2d 1258, 1268 (M.D. Fla. 2007) (Corrigan, J.) (quoting *Leon*, 251 F.3d at 1312). To make that showing, the plaintiff can rely on "substantiated . . . allegations of serious corruption or delay." *Leon*, 251 F.3d at 1312. The Eleventh Circuit has been clear, though, that, while defendants do have the "ultimate burden of persuasion" to establish adequacy, they bear this burden "*only* where the plaintiff has *substantiated* his allegations of corruption or delay." *Ibid.* (emphasis added); *see also ibid.* (noting that, if the plaintiff offers "*significant* evidence documenting the partiality or delay (in years) typically associated with the adjudication of similar claims, and these conditions are so severe as to call the adequacy of the forum into doubt, then the defendant has the burden to persuade the [court] that the facts are otherwise," but adding that, where a plaintiff's allegations are unsupported, the court may reject them "without considering any evidence from the defendant"). As the Eleventh Circuit has observed, "the argument that the alternative forum is too corrupt to be adequate does not enjoy a particularly impressive track record." *Id.* at 1311–12 (cleaned up).

In our case, Francisco hasn't substantiated his allegations with "significant evidence." To begin with, Francisco cannot rely on the expert report he attached to his Response because "a party cannot amend a complaint by attaching documents to a response to a motion to dismiss." *Jallali v. Nova Se. Univ., Inc.*, 486 F. App'x 765, 767 (11th Cir. 2012). In any event, Orellana never actually says that Guatemala's legal system is inadequate or that, if we were to send Francisco to Guatemala, he'd be left without any legal remedy. Instead, after discussing the state of the Guatemalan judiciary, he writes this:

> Guatemala is undergoing a crisis in its justice system derived from systematic interferences aimed at undermining judicial independence. These interferences manifest in multiple ways, including political and institutional pressures affecting judicial decision-making, irregularities in the processes for appointment and removal of judges, and the inconsistent application of procedural safeguards. Collectively, these factors weaken public confidence in the judiciary and create uncertainty regarding the fairness of judicial outcomes. . . .

> The cumulative effect of these conditions is a judicial environment in which litigants cannot always reliably expect proceedings to be conducted with impartiality and procedural fairness. While Guatemala's legal framework formally guarantees judicial independence and due process, the reality is that this is sometimes aspirational.

Orellana Rep. at 6–7. Indeed, far from suggesting that Francisco would be left with "no remedy at all," *Piper*, 454 U.S. at 254, Orellana concedes that, in Guatemala, Francisco *could* bring Count I as "[a] civil claim for fraud" and Count II as either an "action to challenge transfers made in bad faith to prejudice lawful successors" or "a claim for extra-contractual civil liability for intentional patrimonial harm," Orellana Rep. at 18. So, even according to Orellana's assessment, while the Guatemalan judicial system may not be perfect, it isn't *inadequate* because the law is well-settled that "[a]n adequate forum need not be a perfect forum." *Satz*, 244 F.3d at 1283.

Francisco also fails to show that the irregularities he may have experienced during the Provisional Amparo proceedings, or the fact that Judge Umaña "is now charged in a criminal case for collusion and abuse of authority," Response at 13, somehow render the *entire* Guatemalan legal system inadequate. That some Guatemalan judges may be corrupt or inept isn't enough to show that the Guatemalan legal system as a whole will afford Francisco "no remedy at all." *Piper*, 454 U.S. at 254; *cf. Lisa, S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233, 1238 (S.D. Fla. 2006) (Moore, J.), *aff'd*, 240 F. App'x 822 (11th Cir. 2007) (finding an alternative forum adequate where plaintiff failed to show that his ability to press a cause of action would be "altogether lost"). To the contrary, that Judge Umaña has been charged with a crime and removed from office would seem to suggest that the Guatemalan legal system condemns and punishes venality. And since Judge Umaña has been removed from the judiciary, Francisco's case—should he choose to file one in Guatemala—will presumably land on a different judge's docket. Plus, Judge Umaña was *neither* the final *nor* the sole decisionmaker in Francisco's case. In fact, the case went through *two* levels of appellate review—first by the Seventh Civil Court *and* then by the Constitutional Court of Guatemala—both populated by panels of distinct judges whom Francisco never accuses of incompetence, much less corruption. In the end, the

12

Constitutional Court affirmed the Provisional Amparo's decision, and Francisco never alleges that Judge Umaña had any involvement with that affirmance. As a result, Francisco fails to address how Judge Umaña's involvement at the *trial court* level tainted the final adjudication of his appeals.

As one of our colleagues has written, "every court that has addressed the adequacy of Guatemala as a forum, has determined that it is an adequate forum." *Lisa, S.A.*, 441 F. Supp. 2d at 1238 (first citing *Polanco v. H.B. Fuller Corp.*, 941 F. Supp. 1512, 1526 (D. Minn. 1996) ("Adequacy of the alternative forum does not require equivalence of result, but merely the existence of some meaningful remedy."); then citing *Kieswetter v. Chiquita Brands Cos. N. Am., Inc.*, 1992 WL 55183 (E.D. La. Mar. 10, 1992); and then citing *Bolanos v. Gulf Oil Corp.*, 502 F. Supp. 689 (W.D. Pa. 1980)); *see also Aldana*, 578 F.3d at 1291 (rejecting the appellants' argument that "Guatemala is an inadequate forum because of alleged corruption affecting the nation's legal system"). And, as the Eleventh Circuit observed in refusing to find the Guatemalan court system inadequate because of a plaintiff's corruption allegations: "[I]t is not hard to imagine that Guatemala might regard trying this case in an American court as a tacit acceptance of the appellants' assertion that the Guatemalan judicial system is too corrupt to justly resolve the dispute." *Aldana*, 578 F.3d at 1299. Since Francisco doesn't explain why we should, twenty years later, engage in just that kind of "tacit acceptance" of his corruption contentions, we easily conclude that Guatemala is an adequate alternative forum for this dispute.

## II.      The Public and Private Interests Favor Dismissal

"The second part of the *forum non conveniens* analysis—the balancing of the private and public factors—is a comparative inquiry that requires the district court to weigh the relative advantages and disadvantages of each respective forum." *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1049 (11th Cir. 2019) (cleaned up). Both sets of factors favor dismissal here.

13

### a.  Private Interests

"The private factors 'pertain to the interests of the participants in the litigation.'" *Ibid.* (quoting *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1331 (11th Cir. 2011)). In assessing this factor, we consider "'the relative ease of access to sources of proof,' which includes the 'availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses," as well as "'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Ibid.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Although "there is normally a strong presumption that the plaintiff has chosen a sufficiently convenient forum," this presumption "weakens" when, as in our case, "the plaintiff is a foreigner litigating far from home." *Leon*, 251 F.3d at 1314–15.

Our case, litigated by exclusively Guatemalan parties, is governed by Guatemalan law and is about control of a Guatemalan company. In these circumstances, the private interest factors weigh decisively in favor of dismissal. We'll start by noting that Francisco doesn't address any of these factors specifically. He, instead, simply claims, in the most general and conclusory way, that "the private interest factors do not weigh in favor of dismissal, as the relevant parties, and thus the relevant evidence, are before the Court as a result of the Sisters' own claims." Response at 23. That's no way to preserve an argument. *See Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."). Besides, the Interpleader Complaint is the only mechanism under which we could exercise subject-matter jurisdiction over *either* the Cross Complaint or the Sisters' claims. Without the Interpleader Complaint, in other words, we'd lack any subject-matter jurisdiction over *any* part of this dispute. So, Francisco is simply wrong to suggest that the parties are before us on "the Sisters' own claims."

14

In any event, "the relative ease of access to sources of proof" and "all other practical problems that make trial of a case easy, expeditious and inexpensive" favor Guatemala. *Gilbert*, 330 U.S. at 508. As we've said, the parties are all Guatemalan citizens who reside in Guatemala, *see* Cross Compl. ¶¶ 4–6 (stating that Francisco and the Sisters are "Guatemalan citizen[s] who reside[ ] in Guatemala City, Guatemala"); the company in question (Pamasa) is a Guatemalan entity, incorporated under the laws of (and with its principal of business in) Guatemala, *see id.* ¶ 7 ("Pamasa, S.A. is a Guatemalan entity incorporated in Guatemala City, Guatemala in March 1990."); Interpleader Compl.¶ 3 ("Pamasa is . . . incorporated in Guatemala with its principal place of business located [in] . . . Guatemala City, Guatemala[.]"); and the witnesses and evidence at the heart of this dispute are all in Guatemala. Plus, every salient event in this case happened in Guatemala, which makes sense, since the question of who controls Pamasa—the crux of this case—necessarily turns on whether the Sisters first "usurp[ed] their aging father's control" by "[f]orging his signature," and whether they then, using Córdova's forged signature, "fraudulently amended [his trust's] bylaws to add a provision" that allowed the Sisters "to invoke a mechanism for having [their father] declared legally incapacitated." Cross Compl. ¶ 16. All these things happened (if they happened at all) in Guatemala.

Even Valerie's claims (which formed the basis of the Provisional Amparo) hinge on whether Córdova, her father, "had purposefully orchestrated an unlawful 'scheme' to transfer the entities' assets to himself during the July 1, 2020 General Shareholders' Meetings," in violation of the "conflict-of-interest provisions in the entities' governing documents and Guatemala's commercial code." *Id.* ¶ 31. And these claims center around the personal knowledge of witnesses in Guatemala, who could testify about whether "her father had kept these Meetings a secret from the rest of the Board members in order to prevent their opposition to his scheme" and whether Francisco "had been authorized to carry out acts that would help his father steal the entities' assets." *Id.* ¶¶ 31–32. A Guatemalan court presumably also has all the documents at the heart of the Provisional Amparo: including the allegedly

15

"defective meeting minutes" that "reflected the impossible circumstance of the meetings having taken place on the same date and at the same time." *Id.* ¶ 32.[9] Whether these were products of "forgery and fraud," as Valerie claimed during the Guatemalan proceedings, or simple "notarial errors that had already been cured," as Francisco now argues, is a question only the Guatemalan witnesses, documents, and evidence can answer. *Ibid.*

As this summation makes plain, all the witnesses and evidence bearing on Córdova's mental state, the Sisters' intentions, and whether the Sisters forged their father's signature are in Guatemala because that's where this family drama played out. Crucially, Francisco never disputes any of this. *See* MTD at 15 (noting that "all the evidence is in Guatemala"); *id.* at 19 ("*[A]ll* of the alleged conduct in the Crossclaim purportedly occurred in Guatemala."); Response at 10 (admitting that the dispute implicates "Guatemalan parties, witnesses, evidence, court proceedings, and assets"); *see generally id.* (failing to identify any witnesses or evidence outside Guatemala).

We therefore conclude that the private interest factors overwhelmingly favor dismissal here. *See, e.g.*, *Aldana*, 578 F.3d at 1294 ("[T]he plaintiffs' choice of forum was the only private interest factor weighing in the appellants' favor, whereas each of the other private interest factors—i.e., the relative ease of access to sources of proof, which in this case were located predominately in Guatemala; the cost of obtaining attendance of willing witnesses, who in this case were also almost entirely in Guatemala; the ability to compel the unwilling witnesses, which in this case was lacking for the witnesses who lived in Guatemala; and additional practical and logistical issues, which in this case included the need to translate documents, and other linguistic barriers—favored a *forum non conveniens* dismissal."); *Lisa*, 441 F. Supp 2d at 1239–40 (finding that the private interests favored dismissal because the "the costs associated with any potential litigation would be far greater if this action were

---

[9] And all these documents, which are presumably in Spanish, would need to be translated into English—a great (and needless) cost in both time and money.

to proceed in Florida. As discussed above, the vast majority of potential witnesses and documents are located in Guatemala. Both parties intend on calling several witnesses that are not under Defendants' control, who reside in Guatemala and are not subject to this Court's process. Most, if not all of the witnesses Plaintiff must call to prove the alleged fraud are located in Guatemala. . . . Finally, the language barrier in this case favors dismissal. Nearly all of the witnesses that will be called at trial would testify in Spanish, and a majority of the relevant documents are in Spanish" (cleaned up)); *Tazoe*, 631 F.3d at 1331 (holding that "[t]he superior access that Brazil offers to sources of proof favors dismissal" because "the vast majority of evidence appears to be in Brazil and France" (cleaned up)).

### b.  The Public Interest Factors

Where, as here, the private interest factors favor dismissal, we needn't consider the public interest factors at all. *See Aldana*, 578 F.3d at 1298 ("It is only when the private interest factors are 'at or near equipoise' that a district court is obliged to consider the public interests at stake in a suit." (cleaned up)). Still, in the interest of completeness, we'll explain why the public interest factors likewise support dismissal here.

"Relevant public interest factors include the sovereigns' interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law." *Satz*, 244 F.3d at 1284 (quoting *Pan. v. BBCI Holdings (Lux.) S.A.*, 119 F.3d 935, 953 (11th Cir. 1997)) (cleaned up)). For two reasons, these public interest factors unambiguously favor dismissal here. *First*, the parties agree that Guatemalan law governs this dispute. *See* Response at 23 ("Francisco Jr. agrees that Guatemalan law governs his tort claims."); MTD at 16 ("Guatemalan law plainly controls Francisco Jr.'s claims."). The Eleventh Circuit has repeatedly held that "the need to resolve and apply foreign law should 'point the trial court towards dismissal[.]'" *Sigalas v. Lido Mar., Inc.*, 776 F.2d 1512, 1519 (cleaned up) (quoting *Piper*, 454 U.S. at 263); *see also Warter v. Bos. Sec., S.A.*, 380 F. Supp. 2d 1299, 1315 (S.D. Fla. 2004) (Ryskamp, J.) ("Even the possibility that foreign law applies to a dispute is sufficient to warrant

dismissal on *forum non conveniens* grounds."); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996) ("Far better that the case be tried in France by one or more jurists as familiar with French law as we are unfamiliar with it."); *Ford v. Brown*, 319 F.3d 1302, 1310 n.24 (11th Cir. 2003) ("[T]ort law . . . is rife with nuances that are not consistently found throughout all jurisdictions. Therefore, the foreign country is ordinarily the best place to litigate a dispute revolving around a foreign rule of decision.").[10]

*Second*, "the fact that the fraud occurred in Guatemala, the conduct causing the injury occurred in Guatemala, the domicile, residence, nationality, place of incorporation and place of business of nearly all of the parties is Guatemala, and the place where the relationship between the parties is centered is Guatemala," *Lisa*, 441 F. Supp. 2d at 1240, renders this dispute "quintessentially Guatemalan," *Aldana*, 578 F.3d at 1298 (finding that the public interest factors strongly favored dismissal where the dispute was "'quintessentially Guatemalan,' since it involved one of Guatemala's largest private employers in one of Guatemala's most important economic sectors and one of Guatemala's most influential labor unions" (cleaned up)); *see also Chinetti v. Ferrari S.p.A.*, 2012 WL 13013131, at *8 (S.D. Fla. Sept. 13, 2012) (Williams, J.) (holding that, because the dispute was "quintessentially Italian," "Italy has an undeniably strong interest in this dispute, and its courts are in a better position to resolve it").

Our case's *only* connection to the United States is the Account, which is held in Miami with our Interpleader, Santander, whom we've already dismissed. *See Lisa*, 441 F. Supp. 2d at 1235 (finding that the public interest factors favored dismissal where the only connection to Miami was that the

---

[10] Demonstrating admirable faith in us, Francisco says that "[t]he application of foreign law . . . is not a sufficient basis for dismissal, as the Court is perfectly capable of applying foreign law—and routinely does so." Response at 23. Even if that's true, the Supreme Court has been clear that "the need to apply foreign law point[s] towards dismissal." *Piper*, 454 U.S. at 260. In any event, in our case, *all* the public interest factors—e.g., judicial economy, the interests of each jurisdiction, and the applicable law—favor Guatemala.

defendants "moved [cash] from the Guatemalan bank accounts to bank accounts in Miami"). In short, "the sovereigns' interests in deciding the dispute[ ] [and] the administrative burdens posed by trial" favor adjudication of this case in Guatemala. *Satz*, 244 F.3d at 1284.

### III.    Francisco Can Reinstate his Lawsuit in Guatemala

"The final element of an analysis under the doctrine of *forum non conveniens* is whether the plaintiff can reinstate the lawsuit in the alternative forum without undue inconvenience or prejudice." *Popescu v. CMA CGM*, 2009 WL 5606131, at *13 (S.D. Fla. Nov. 5, 2009) (Altonaga, J.), *aff'd*, 384 F. App'x 902 (11th Cir. 2010). In the Sisters' view, Guatemala is an adequate alternative forum because "the Guatemalan courts . . . could [ ] now consider Francisco Jr.'s fraud claim." MTD at 15. "The same," they say, "goes for the tortious interference with inheritance claim." *Ibid.*

Francisco disagrees. He claims that he cannot reinstate this action in Guatemala because "there are no live, parallel proceedings in Guatemalan probate court." Response at 23. And, he adds, "Guatemala's probate forum is structurally incapable of resolving the claims being asserted here, as [s]uccession courts in Guatemala determine heirship and administer estate distribution; they generally do not adjudicate third-party fraud claims." *Id.* at 23–24 (quoting Orellana Rep. at 17–18). But our issue here *isn't* whether there are ongoing parallel proceedings in Guatemala—that's a red herring. The question, rather, is whether Francisco "can reinstate the lawsuit" in Guatemala, *Popescu*, 2009 WL 5606131, at *13—*i.e.*, whether he may assert *future* claims. And Francisco's Response is notably silent on this crucial question.

Plus, Francisco's claim that Guatemalan courts would be incapable of hearing his fraud claims is belied by his own expert, who was clear that Francisco *could* bring Count I in Guatemala as "[a] civil claim for fraud" and Count II as either an "action to challenge transfers made in bad faith to prejudice lawful successors" or "a claim for extra-contractual civil liability for intentional patrimonial harm." Orellana Report at 18. Even disregarding the Orellana Report, the Constitutional Order declared that

the Provisional Amparo was "subject to the final judicial decisions that must be assumed in the different trials that must be promoted in the ordinary jurisdiction by the interested shareholders of . . . Pamasa, Soeciedad Anonima[.]" Constitutional Order at 45. And it allowed Pamasa's shareholders to retain control of the company "until the relevant jurisdiction declares who should act as the definitive representative of the related entities." *Id.* at 46. In other words, the Constitutional Order simply maintained the status quo until Francisco's fraud claims could be resolved "in the ordinary jurisdiction," *i.e.* through a civil fraud claim. *Id.* at 45. Against all this, Francico never even suggests that his cause of action doesn't exist in Guatemala or that he would be barred from bringing a civil fraud claim there. He, instead, says only that "the Guatemalan judiciary . . . lacks guarantees of impartiality or procedural fairness, and thus lacks the safeguards necessary for Guatemala to be deemed an adequate forum." Response at 8. But, again, for all the reasons we've outlined, his corruption allegations simply aren't sufficient for us to declare Guatemala an inadequate forum. This final prong thus likewise favors dismissal.

\*\*\*

One last thing. The operative complaint in this action is the Interpleader Complaint. *See* Order after Status Conference ¶ 1 ("The Interpleader Complaint [ECF No. 12] is now the operative Complaint in this case."). "Interpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner." *In re Mandalay Shores Co-op. Hous. Ass'n Inc.*, 21 F.3d 380, 383 (11th Cir. 1994); *see also* FED. R. CIV. P. 22 (governing interpleader). An "Interpleader action proceeds in two stages. At the first stage, the court determines whether interpleader is proper and whether to discharge the stakeholder from further liability to the claimants. At the second stage, the court evaluates the respective rights of the claimants to the interpleaded funds." *Ohio Nat'l Life Assurance Corp. v. Langkau*, 353 F. App'x 244, 248 (11th Cir. 2009) (cleaned up). "When the court

20

decides that interpleader is available, it may issue an order discharging the stakeholder, if the stakeholder is disinterested." *Ibid.*

We're now at this second stage. *See* Order after Status Conference (dismissing Santander); *see also* November 4, 2026, Paperless Minutes (finding interpleader proper and discharging Santander from further liability to the claimants). So, we'll resolve the respective rights of the claimants to the interpleaded funds at summary judgment. Under the Amended Scheduling Order [ECF No. 59], the parties must file their motions for summary judgment by September 23, 2026. *See* Amended Scheduling Order at 2. In the meantime, we'll schedule a status conference to discuss how best to proceed with the balance of this case.

## CONCLUSION

Because this is a dispute over a Guatemalan company between Guatemalan citizens under Guatemalan law, we dismiss Francisco's Cross Complaint under the doctrine of *forum non conveniens*. After careful review, therefore, we **ORDER** and **ADJUDGE** as follows:

1. The Motion to Dismiss [ECF No. 30] is **GRANTED**.

2. The Cross Complaint [ECF No. 23] is **DISMISSED** *without prejudice*.

3. We **SCHEDULE** a status conference for **August 11, 2026**, at 1:00 p.m.

**DONE AND ORDERED** in the Southern District of Florida on July 7, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

21